**Barber LOFTY, Plaintiff-Appellant,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 20484.**

United States Court of Appeals, Sixth Circuit.

March 4, 1971.

Morton E. Schneider, Detroit, Mich., Kelman, Loria, Downing & Schneider, Detroit, Mich., on the brief, for appellant.

James C. Hair, Jr., Department of Justice, Washington, D. C., William D. Ruckelshaus, Asst. Atty. Gen., Kathryn H. Baldwin, Atty., Department of Justice, Washington, D. C., James H. Brickley, U. S. Atty., Detroit, Mich., on the brief, for appellee.

Before EDWARDS and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

EDWARDS, Circuit Judge.

In this case appellant attacks the constitutionality of an amendment to the Social Security Act adopted in 1965 (42 U.S.C. § 424a, as amended, (Supp. V, 1969)) which had the effect of reducing a claimant's Social Security disability benefits by the amount of Workmen's Compensation benefits received by him where the total received under the two programs exceeded 80% of his previous average monthly wages. Appellant claims this provision violates the due process clause of the United States Constitution because when Congress made Workmen's Compensation the only subject for such deductions, it thereby created a patently arbitrary classification.

We begin our consideration of this case, as indeed we must, with the Supreme Court's last ruling upon an invidious classification argument in a Social Security case.

"This is not to say, however, that Congress may exercise its power to modify the statutory scheme free of all constitutional restraint. The interest of a covered employee under the Act is of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause. In judging the permissibility of the cut-off provisions of § 202(n) from this standpoint, it is not within our authority to determine whether the Congressional judgment expressed in that section is sound or equitable, or whether it comports well or ill with the purposes of the Act. 'Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom.' Helvering v. Davis, *supra*, 301 U.S. [619] at page 644, 57 S.Ct. [904] at page 910 [81 L.Ed. 1307]. Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, *we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.*" Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). (Emphasis added.)

Since we cannot say that the classification herein attacked was "utterly lacking in rational justification," we cannot hold as appellant asks that Congress was without power to pass the 1965 amendment.

Claimant in this case was granted total and permanent disability benefits under the Social Security Act starting in 1966. In June of 1966 he accepted a lump sum "redemption settlement" in full payment of his Workmen's Compensation claim arising out of the same injuries which produced his total and permanent disability for Social Security benefits.

Taking into account the Workmen's Compensation settlement, the Secretary reduced claimant's Social Security benefits from $269.80 a month to $25.80 per month for 44 months, or until the Compensation settlement had been exhausted at the rate of $57 per week. This action was taken under 42 U.S.C. § 424a, as amended, (Supp. V, 1969), which placed a limit of 80% of claimant's previous average monthly earnings upon the total of Social Security and Workmen's Compensation benefits which he was to receive. Section 424a required that only the difference, after deduction of Workmen's Compensation benefits, should be paid by Social Security.

This reduction formula was adopted by Congress in 1965, effective January 1, 1966. Much of the testimony which preceded its adoption argued that double disability benefits close to or exceeding prior earnings defeated the purpose of motivating injured beneficiaries back toward productive work and tempted the states to reduce or eliminate Workmen's Compensation benefits and throw full responsibility on the national Social Security scheme.

The amendment enacted by Congress is now attacked, not because the purposes claimed for it might not be arguably rational grounds for congressional action, but because Congress in establishing the reduction provision referred to above did not also include such benefits as private insurance proceeds and benefits resulting from damage suits in civil courts. It is claimed that existence of these benefits without deductions makes the selection of Workmen's Compensation as the only deduction against Social Security benefits an arbitrary and capricious classification which cannot stand when tested against the due process clause.

The District Judge who heard this case below dismissed it with a brief opinion, 325 F.Supp. 285, which cited the reasons for the amendment referred to above and held that "it is therefore reasonable to preclude a claimant from receiving amounts as a result of retirement or disability far in excess of his earnings received while working." The District Judge held that the classification involved herein was not patently arbitrary within the meaning of Flemming v. Nester, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

We have already set forth above the essential holding of the *Flemming* case upon which the District Judge based decision. But there is a good deal of case law which serves to illustrate the breadth of legislative power accorded the Congress (or the states) by the Supreme Court's interpretation of the constitutional limitations contained in the due process and equal protection clauses.

In the following two cases, former Chief Justice Warren wrote for the Court:

"The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. See Kotch v. Board of River Port Pilot Com'rs, 330 U.S. 552, [67 S.Ct. 910, 91 L.Ed. 1093]; Metropolitan Casualty Ins. Co. [of New York] v.

Brownell, 294 U.S. 580, [55 S.Ct. 538, 79 L.Ed. 1070]; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, [31 S.Ct. 337, 55 L.Ed. 369]; Atchison, T. & S. F. R. Co. v. Matthews, 174 U.S. 96, [19 S.Ct. 609, 43 L.Ed. 909]." McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed. 2d 393 (1961). (Footnotes omitted.)

"[S]ome basic guidelines have been firmly fixed. The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify them. See McGowan v. Maryland, 366 U.S. 420, [81 S.Ct. 1101, 6 L.Ed.2d 393] (1961); Kotch v. Board of River Port Pilot Commissioners, 330 U.S. 552, [67 S.Ct. 910, 91 L.Ed. 1093] (1947); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, [31 S.Ct. 337, 55 L.Ed. 369] (1911). With this much discretion, a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, [75 S.Ct. 461, 465, 99 L.Ed. 563] (1955); and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every

evil that might conceivably have been attacked. See Ozan Lumber Co. v. Union County National Bank, 207 U.S. 251, [28 S.Ct. 89, 52 L.Ed. 195] (1907)." McDonald v. Board of Election Commissioners of Chicago, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).

Even more recently Justice Stewart dealt with a somewhat similar classification argument:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, [31 S.Ct. 337, 340, 55 L.Ed. 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, [33 S.Ct. 441, 443, 57 L.Ed. 730]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393]." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

With these rules pertaining to legislative power before us,[1] we turn directly to the background and purpose of the disputed amendment.

1. The *McGowan, McDonald* and *Dandridge* cases are, of course, attacks upon state statutes, wherein appellant's reliance was upon the equal protection clause of the Fourteenth Amendment. As to an assertion of an arbitrary classification argument, there is a wide area of overlap between the effect of the Fifth Amendment's due process clause and the Fourteenth Amendment's equal protection clause. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

If there be a difference between the effect of these two clauses, it would appear that since the equal protection clause is the more "explicit" of the two clauses, the cases quoted above would apply a fortiori to this attack upon a federal statutory classification where reliance is had on due process.

The legislative record plainly shows that Congress had the Workmen's Compensation-Social Security overlap before it as a problem for a decade. When the Social Security Act was first passed in 1935, it provided no disability benefits. Act of Aug. 14, 1935, ch. 531, 49 Stat. 620 et seq., (42 U.S.C. § 301ff). When benefits for total and permanent disability were first added in 1956, Congress did require the offset of Workmen's Compensation. Act of Aug. 1, 1956, Pub.L.No. 880, 70 Stat. 816, 817.

Two years later, however, acting on the assumption that the impact of the duplication was relatively slight, the offset provision was repealed. Act of Aug. 28, 1958, Pub.L.No. 85–840, Sec. 206, 72 Stat. 1025.

In the years which followed it is clear that Congress received a great number of complaints about the repeal of the offset. These complaints—the overwhelming majority of them originating with large employers or large employer organizations—led to reenactment of the Workmen's Compensation offset (in somewhat different form) in the Soc. Sec. Amendments of 1965, eff. Jan. 1, 1966, Pub.L.No. 89–97, Tit. III, § 335, 79 Stat. 406. 42 U.S.C. § 424a, as amended, (Supp. V, 1969).

Hearings were held before adoption of Section 424a only in the Senate—but the record there amply serves to indicate the rationale of its advocates. Thus L. J. Dikovics, representing the Council of State Chambers of Commerce, told the Senate subcommittee:

Thousands of disabled workers today are receiving more tax-free income from social security disability benefits combined with State workmen's compensation benefits than they were earning before they became ill or were injured. Section 303 would add many more thousands to this number. When tax-free social insurance benefits exceed earning power there is little incentive for a disabled person to accept the risk, pain, and struggle involved in attempting to become self-supporting again.

A matter of equal concern is the impact of Federal disability payments on State workmen's compensation programs. Legislative proposals have been offered in several States (Colorado, Florida, Maryland, and Minnesota) to reduce workmen's compensation benefits by the amount of OASI disability benefits payable to a disabled worker. If other States follow this direction and section 303 of this bill is enacted, we believe it will be only a matter of time until State workmen's compensation programs are destroyed.

If that happens, a major impetus for this country's remarkable achievements in occupational safety will be destroyed also. Workmen's compensation insurance costs are based on the actual loss experience of industry groups and of individual employers. This gives the employer a direct financial incentive to improve safety on the job. If workmen's compensation costs are absorbed into the social security program, employers without safety programs and those whose employment is hazardous would pay no more than those employers who have adopted safety programs or who have less hazardous employment. We strenuously object to any action which could have an adverse effect on safety programs and on the remarkable downswing in disabling accidents that has taken place over the last three decades. Hearings on H.R. 6675 Before the Senate Comm. on Finance, 89th Cong., 1st Sess., p. 259 (1965).

And J. Dewey Dorsett, representing the American Insurance Association, presented a table purporting to show that continued duplication of benefits under terms of the then pending bill would

mean at least some payments in excess of prior average "take home pay" in every state, and up to a maximum of 247% in the instance of Arizona.

CHART I.—*Duplication of workmen's compensation disability benefits by social security benefits in H.R. 6675*

| State | Combined workmen's compensation and social security benefits [1] | Average weekly take-home pay [2] | Workmen's compensation maximum weekly benefit [3] | Combined benefits percentage of take-home pay |
|---|---|---|---|---|
| Alabama | $96.62 | $67.96 | $38.00 | 142 |
| Alaska | 172.00 | 130.10 | 100.00 | 132 |
| Arizona | 222.10 | 90.06 | 152.50 | 247 |
| Arkansas | 92.05 | 65.16 | 35.00 | 141 |
| California | 142.00 | 101.21 | 70.00 | 140 |
| Colorado | 111.60 | 86.55 | 43.75 | 129 |
| Connecticut | 127.77 | 88.35 | 59.00 | 145 |
| Delaware | 113.97 | 79.30 | 50.00 | 144 |
| District of Columbia | 137.48 | 86.30 | 70.00 | 159 |
| Florida | 101.26 | 69.05 | 42.00 | 147 |
| Georgia | 94.97 | 66.74 | 37.00 | 142 |
| Hawaii | 142.85 | 87.11 | 75.00 | 164 |
| Idaho | 110.26 | 81.56 | 45.00 | 135 |
| Illinois | 122.85 | 86.73 | 55.00 | 142 |
| Indiana | 108.97 | 78.94 | 45.00 | 138 |
| Iowa | 105.60 | 78.08 | 42.00 | 135 |
| Kansas | 107.26 | 81.38 | 42.00 | 132 |
| Kentucky | 102.38 | 73.59 | 41.00 | 139 |
| Louisiana | 98.14 | 77.12 | 35.00 | 127 |
| Maine | 100.62 | 67.32 | 42.00 | 149 |
| Maryland | 119.43 | 79.58 | 55.00 | 150 |
| Massachusetts | 137.18 | 83.50 | 71.00 | 164 |
| Michigan | 149.77 | 89.01 | 81.00 | 168 |
| Minnesota | 111.18 | 83.14 | 45.00 | 134 |
| Mississippi | 89.46 | 63.08 | 35.00 | 142 |
| Missouri | 111.93 | 79.60 | 47.50 | 141 |
| Montana | 114.31 | 88.08 | 46.00 | 130 |
| Nebraska | 103.60 | 77.76 | 40.00 | 133 |
| Nevada | 125.96 | [4] 98.76 | 57.20 | 127 |
| New Hampshire | 104.72 | 70.40 | 45.00 | 149 |
| New Jersey | 111.55 | 84.68 | 45.00 | 132 |
| New Mexico | 108.77 | 88.61 | 40.00 | 123 |
| New York | 127.48 | 85.89 | 60.00 | 148 |
| North Carolina | 93.81 | 65.14 | 37.50 | 144 |
| North Dakota | 109.80 | [4] 73.71 | 51.00 | 149 |
| Ohio | 121.73 | [4] 91.68 | 56.00 | 133 |
| Oklahoma | 100.18 | 76.41 | 37.50 | 131 |
| Oregon | 121.29 | [4] 85.81 | 57.69 | 141 |
| Pennsylvania | 113.68 | 83.88 | 47.50 | 135 |
| Rhode Island | 109.43 | 79.54 | 45.00 | 138 |
| South Carolina | 90.38 | 63.93 | 35.00 | 141 |
| South Dakota | 101.60 | 78.40 | 38.00 | 130 |
| Tennessee | 96.80 | 68.07 | 38.00 | 142 |
| Texas | 98.14 | 77.06 | 35.00 | 127 |
| Utah | 122.40 | 90.41 | 52.80 | 135 |
| Vermont | 103.26 | 69.00 | 44.00 | 150 |
| Virginia | 98.26 | 69.52 | 39.00 | 141 |
| Washington | 122.57 | [4] 89.40 | 57.69 | 137 |
| West Virginia | 100.31 | [4] 82.88 | 38.00 | 121 |
| Wisconsin | 130.18 | 83.50 | 64.00 | 156 |
| Wyoming | 118.51 | [4] 84.37 | 55.38 | 140 |
| Longshoremen's Act | 114.67 | (5) | 70.00 | ....... |

[1] Compensation benefits for temporary total disability payable to a worker with a wife and 2 children. Social Security benefits provided in H.R. 6675 (medicare bill), pp. 164–165.

[2] Average weekly wages less Federal income and social security taxes (4 deductions). Based upon wages of employees to whom compensation paid, July 1964—National Council on Compensation Insurance.

[3] As of May 1965. Includes maximum allowance for temporary total disability for worker with a wife and 2 children. (Michigan and New York reflect benefit increases contained in bills that have passed their legislature.)

[4] Figures not available to National Council on Compensation Insurance for monopolistic State fund. Source: Production workers in manufacturing—1960 Statistical Supplement, Monthly Labor Review, pp. 33–35 (U.S. Department of Labor).

[5] Figures not available—varies in each State.

Hearings on H.R. 6675 Before the Senate Comm. on Finance, 89th Cong., 1st Sess., p. 898 (1965).

It is clear that employer advocates of the offset amendment outweighed their opponents in numbers of spokesmen and of exhibits tendered. But an opposing point of view was presented by the Secretary of Health, Education and Welfare[2] and two of his top associates who sought to delay enactment of any change until a more thorough study had been made.

Secretary Celebrezze. Senator, I think yesterday I explained that the Advisory Council on Social Security, which made a report recently, asked that a study be made, and the House Ways and Means Committee in their report also directed us to make a study of the extent and effects of the overlap between social security and workmen's compensation and to report by December 1966. I think I stated yesterday that perhaps 2 percent of the disability beneficiaries under social security also receive workmen's compensation, and that there were many factors that had to be considered in connection with this question. This issue has to be studied in depth.

I can't give you an off-the-cuff opinion on it, but let me tell you what some of the basic problems would be.

First of all, if at the time of disability the man has a low-paying job, of course, that would have a bearing upon the amount of benefits he would receive.

Then, if a man is totally disabled as of a certain period, even though under a combination of workmen's compensation and social security disability benefits he may receive more than his wages were, I think we have to give some consideration to the fact that had he not been disabled his wages would have been substantially higher, say, 10 or 15 years later, and to find a way of taking account of that fact.

Another element is that the Congress of the United States in 1958 re-pealed the offset provision that had been in effect because it presented a great many technical and administrative problems. In certain cases, the offset provision resulted in delays in paying disability benefits because of the slow process, in some instances, of determination under workmen's compensation and because we couldn't move until we knew what the amount of compensation was when the award had been made.

So there are many problems that have to be staffed out and thoroughly considered.

I think the House Ways and Means Committee in its wisdom arrived at the right conclusion—that there is a need for the Social Security Administration to make a thorough study of this question and to report back to Congress by December of 1966. Hearings on H.R. 6675 Before the Senate Comm. on Finance, 89th Cong., 1st Sess., p. 146 (1965).

However persuasive this statement might appear to us, it is clear that the Senate committee did not desire to wait. Its report on which subsequently the Senate and then the House acted favorably provided:

(b) *Reduction of disability benefits on account of receipt of workmen's compensation benefits*

The committee has taken note of the concern that has been expressed by many witnesses in the hearings about the payment of disability benefits concurrently with benefits payable under State workmen's compensation programs. While data of the kind requested by the House Committee on Ways and Means in its report on this bill are not now available, the committee believes that amendatory legislation should not await completion of the requested study. Although there is some dispute as to the number of workers who receive benefits under these two programs and whether these payments are excessive, the committee be-

2. Hon. Anthony J. Celebrezze, now a Judge of this court.

lieves that it is desirable as a matter of sound principle to prevent the payment of excessive combined benefits.

The committee believes that the provision it is recommending avoids the problems and inequities of the earlier offset provision in the social security law for reducing monthly disability benefits by the amount of any other benefit to which a worker was entitled under State workmen's compensation laws, which was in effect from July 1957 to July 1958, but was repealed then. The new offset provision recommended by the committee provides for a reduction in the social security disability benefit (except where the State workmen's compensation law provides for an offset against social security disability benefits) in the event the total benefits paid under the two programs exceed 80 percent of the worker's average monthly earnings prior to the onset of the disability. Under this provision, the worker's average monthly earnings would be defined as the higher of (a) his average monthly wage used for purposes of computing his social security disability benefit or (b) his average monthly earnings, in employment covered by social security, during his highest 5 consecutive years after 1950. (In no event, however, would the total benefits payable with respect to a worker be reduced below the amount of the unreduced monthly social security benefits.) This reduction formula would generally avoid the inequity encountered under the previous offset provision, where the reductions that were required frequently resulted in benefits that replaced no more than 30 percent or so of the worker's earnings at disablement. S.Rep.No.404, 89th Cong., 1st Sess., p. 100 (1965).

This then brings us to consideration of appellant's argument that the disputed amendment represents "a patently arbitrary classification, utterly lacking in rational justification." Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960), and hence must be declared void. It seems to us that the result contended for by appellant would represent a very narrow construction of the congressional power to enact, amend and modify social legislation as required by the circumstances reported to Congress concerning its operation. If (as appellant concedes) the rationale for preventing double coverage is a reasonable one (whether we might individually agree with it or not) then we believe that Congress also had the right to make it applicable to Workmen's Compensation claimants and not to do so as to recipients of damage action judgments and private insurance proceeds.

The legislative history of this amendment shows a great many complaints were registered before Congress about Workmen's Compensation-Social Security double coverage. The record is devoid of any complaints at all about double coverage resulting from private insurance or negligence actions in courts. It is neither novel nor necessarily irrational for Congress to fail to act upon a problem about which they have received no complaints and have been supplied no information, even when Congress, as here, does act upon a somewhat parallel problem as to which it had both.

Still another reason which might reasonably be conceived to justify the congressional classification is that administratively it would be relatively simple to enforce the Workmen's Compensation deductions, whereas separating out the wage benefits from civil damage judgments, or determining who had received private insurance benefits, might offer administrative problems of a serious nature.

Finally, it is entirely conceivable to us that Congress may have considered Social Security benefits and Workmen's Compensation benefits to be more arguably duplicative of one another than could appropriately be claimed concerning Social Security benefits and the other two types of payments. Both Social Security and Workmen's Compensation programs are social welfare legislation. Private accident or disability insurance

is a private contract, frequently paid for entirely by the recipient. And, of course, court awards for injuries are private rights derived from the common law involving the principle of compensation for negligence or fault.

Most of the argument for the Workmen's Compensation off-set came from employers who generally pay all of the costs for Workmen's Compensation and half of the costs of the Social Security benefits. Their argument before Congress was that they were paying twice for the same injury. This argument would have, of course, no merit at all in relation to a damage action award or to the proceeds of privately purchased accident or disability insurance.

As we have already indicated, our conclusion is that Section 424a does not violate the due process clause of the United States Constitution.

As to the other two issues presented in appellant's brief, we affirm the judgment of the District Court for the reasons set forth in the opinion of the District Judge.

The judgment of the District Court is affirmed.