SUBSEQUENT INJURY FUND *v.* STATE ROADS
COMMISSION ET AL.

[No. 695, September Term, 1976.]

*Decided March 15, 1977.*

The cause was argued before GILBERT, C. J., and MORTON and LOWE, JJ.

*H. George Meredith, Jr., Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Charles R. Goldsborough, Jr., Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *J. Howard Holzer, Special Attorney,* on the brief, for appellees State Roads Commission and State Accident Fund.

*Herbert J. Arnold* and *Robert Earl Wilson*, with whom were *Arnold, Beauchemin & Huber, P.A.* on the brief, for other appellee.

LOWE, J., delivered the opinion of the Court.

The sole question to be answered in this case is whether the Subsequent Injury Fund's liability under Md. Code, Art. 101, § 66, may be satisfied and discharged pro tanto or in full when the employer furnishes a pension benefit to the claimant under the provisions of Md. Code, Art. 101, § 33. Factually, it will suffice to relate that the claimant, Edward F. Jarzynski, was an employee of the State of Maryland through the State Roads Commission and was injured in that capacity. Because of physical impairments from a prior disability, he was entitled to and received an award from the Subsequent Injury Fund pursuant to § 66, as well as from his employer, the State Roads Commission, through its insurer the State Accident Fund.

The Workmen's Compensation Commission denied the State Accident Fund and the Subsequent Injury Fund the setoff to which the employers set forth in Md. Code, Art. 101, § 21 (a) (2) are entitled pursuant to § 33.[1] An appeal was taken to the Baltimore City Court which reversed that holding as to the State Accident Fund by granting summary judgment in favor of the employer and insurer against the claimant, relying on *Nooe v. City of Baltimore*, 28 Md. App. 348 and *Mazor v. Dep't of Correction*, 30 Md. App. 394. As to the Subsequent Injury Fund, however, the court denied its motion for summary judgment and granted claimant's motion against the Fund. The court held that it was not the intention of the Legislature to include the Subsequent Injury Fund "within the parameters [sic] of Article 101 § 33."

We do not agree.

On February 8, 1977 the Court of Appeals affirmed the

---

1. Jarzynski had been awarded non-contributory pension benefits by his employer which exceeded the total monthly workmen's compensation benefits which his employer, its insurer, and the Subsequent Injury Fund has been ordered to pay him. This pension triggered the setoff attempts.

opinion written for us by Judge Menchine in *Mazor, supra. Mazor v. Dep't of Correction*, 279 Md. 355 (1977). The Court, through Judge Levine, said, *inter alia*, that § 33 was constitutional and that the insurer, as distinguished from the employer, was also entitled to a discharge under that section. Although in footnote 8 of its opinion the Court expressly declined to decide the question of § 33's applicability to the Subsequent Injury Fund because that issue was not properly before it, we find the reasoning of that case most persuasive that the Subsequent Injury Fund is entitled to the benefits of § 33.

Citing abundant authority which we shall omit, the Court set forth six principal guidelines of statutory interpretation:

> "[T]he cardinal rule of construction of a statute is to ascertain and carry out the real intention of the Legislature. . . .
>
> The primary source from which we glean this intention is the language of the statute itself. . . .
>
> And in construing a statute we accord the words their ordinary and natural signification. . . .
>
> If reasonably possible, a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless. . . .
>
> Similarly, wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences. . . .
>
> Moreover, if the statute is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature." *Id.*, slip op. at 5.

We will therefore look first at the words of the statute to glean the Legislature's intention.

The key words indicative of intent all appear in the same sentence. First we look for what it is that *will satisfy* the obligation. Section 33 tells us:

> "the . . . benefits . . . furnished by the employer shall satisfy and discharge . . ."

the obligation. We know from § 66 (2) that the Subsequent Injury Fund is financed by payments from the employer or the employer's insurer of 5% on all awards rendered against the employer for permanent disability and death. We will judicially notice (if common sense does not suffice to tell us) that any such payments by an insurer will be reflected in the premiums paid by the employer. Thus the Fund is a benefit "furnished by the employer". The Legislature's use of that phrase in connection with the term "benefit" was obviously designed to avoid attempting to anticipate and list each benefit which is directly or indirectly derived from the employer and chance a restrictive interpretation by a court resorting to the rule of *ejusdem generis.*

That conclusion is reemphasized by what we find the Legislature expressly stated *is to be satisfied* in the latter part of the relevant sentence in § 33 (c). We are told that the pension payments shall satisfy and discharge:

> "the liability or obligation of the employer for *any benefit under this article.*" (emphasis added).

Such broad terms were obviously intended to avoid the restrictive interpretation and just as obviously to include the Subsequent Injury Fund as one of the "any" benefits under the article.

By according "the words of the Act their ordinary and natural signification" without rendering any of them "surplusage or meaningless", it is apparent that the Fund was intended to be included within the context of § 33.

This literal interpretation also fits the "general statutory scheme or system" of the Workmen's Compensation article. For us to read into that statutory scheme an intent to award an injured person with a preexisting condition substantially more than would be provided an injured person with equal disability but without previous impairment would certainly lead to an absurd consequence. No rational reason is apparent why the Legislature would deny a duplication of benefits on the one hand and permit it on the other. That rationale is cogently explicated by *Larson's Workmen's*

*Compensation Law,* §§ 59.41 and 97.10, which reasoning we adopted in our *Mazor,* 30 Md. App. at 399-400:

"§59.41. . .

There is a practical reason for the holding that awards for successive or concurrent permanent injuries should not take the form of weekly payments higher than the weekly maxima for total disability. At a given moment in time, a man can be no more than totally disabled, and if he is allowed to draw weekly benefits simultaneously from a permanent total and a permanent partial award, it may be argued that it will be more profitable for him to be disabled than to be well — a situation which compensation law always studiously avoids in order to prevent inducement to malingering." (footnotes omitted).

"§97.10 *Impropriety of duplicate benefits*

Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that workmen's compensation, unemployment compensation, non-occupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied then all coordination becomes impossible and social legislation becomes a grab-bag of assorted

unrelated benefits. For example, if workmen's compensation is thought of as a quasi-tort recovery, there will be a temptation to say that the injured workman should be entitled to keep the entire recovery without reference to any other legislative benefits he may receive for the same wage loss. Again, if non-occupational disability insurance is viewed, as it was for a time in Rhode Island, as essentially equivalent to private health and accident insurance, the argument will be heard that a worker had just as much right to keep both occupational and non-occupational disability benefits as he would have to collect both workmen's compensation and the proceeds of a private accident policy."

See also *Nooe, supra,* 28 Md. App. at 352.

We therefore reverse the judgment of the Baltimore City Court as it was granted by order of June 11, 1976 upon claimant Jarzynski's Motion for Summary Judgment against the Subsequent Injury Fund, and we enter judgment on behalf of the Subsequent Injury Fund against Jarzynski, notwithstanding that it did not file a cross-motion for summary judgment. See Md. Rule 610 d.1. We affirm that part of the order granting Summary Judgment for the employer State Roads Commission and the insurer, State Accident Fund, against Jarzynski.

> *Judgment reversed in part and affirmed in part.*
> *Costs to be paid by appellee Jarzynski.*