## PRINCE GEORGE'S COUNTY, MARYLAND *v.* KARL G. FEISSNER

[Nos. 754 and 975, September Term, 1976.]

*Decided September 7, 1977.*

The cause was argued before POWERS, MOORE and LISS, JJ.

*R. Roger Drechsler* and *Karel C. Petraitis, Associate County Attorney for Prince George's County,* with whom were *James C. Chapin, County Attorney,* and *Lord, Whip, Coughlan & Green* on the brief, for appellants.

*Robert H. Levan,* with whom were *Feissner, Garrity, Levan & Schimel* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

These two appeals from judgments of the Circuit Court for Prince George's County came to this Court on separate records from two different cases decided in that court. Both cases were filed by Karl G. Feissner, a member of the bar, appellee here, against Prince George's County, Maryland, appellant here. Although each case asserts a separate cause of action, and despite some differences in the facts and in the procedures which led to the decisions below, both require consideration of the same sections of the Workmen's Compensation Law and both are controlled by the same authorities.

The statutes involved are § 33 and § 57 of Code, Art. 101. The question, in short, is whether the attorney for a claimant in a workmen's compensation case may collect a fee approved under § 57 from the claimant's governmental employer, when the compensation award is discharged in full by § 33, because benefits furnished by the employer under a pension system are better than the benefits provided in the award.

### The Seger Case — No. 975

On 5 December 1975 Feissner filed a suit at law in contract against Prince George's County. The basis of the claim, as alleged in a special count, was an order of the Workmen's Compensation Commission entered on 3 September 1975 in the claim of Samuel T. Seger v. Prince George's County. The order was incorporated into the pleading by reference. It approved a petition by Feissner for attorney's fees and medical fees, and directed the employer to pay to Feissner, as counsel for the claimant, the sum of $5,659.00. The order bore the Commission's imprint that the fees were to be paid from the final weeks of compensation due in the case.

The County filed general issue pleas. A motion for summary judgment filed by Feissner and opposed by the County was heard and denied. After further proceedings, including interrogatories and answers, the case was set for

non-jury trial on 3 September 1976. On that day the case was submitted to Judge James H. Taylor upon stipulated exhibits, which the parties agreed contained the pertinent facts, and upon arguments of counsel.

The exhibits included:

(a) A Commission order dated 3 March 1975 finding Seger permanently totally disabled, and ordering the employer to pay compensation at the rate of $96.80 weekly, beginning 1 August 1973, not to exceed the sum of $45,000.00; subject to the provisions of the Workmen's Compensation Law.

(b) Feissner's petition to the Commission in July 1975 for attorney's fees and medical fees.

(c) A Commission order dated 3 September 1975 approving the petition and directing the employer to pay Feissner $5,659.00.

(d) The County's record of compensation paid. Lump sum payments were made to Seger on 2 May 1975 in the amount of $8,905.60, bringing to date the payments accrued under the order. The record further shows that Seger was paid $193.60 every two weeks through 15 June 1976. The total paid to Seger under the award was $14,520.00, leaving $30,480.00 of the $45,000.00 award unpaid.

(e) A Commission order dated 2 June 1976. Exercising its continuing jurisdiction, the Commission made findings on several issues. It found 1) That Art. 101, § 33 was applicable in this case, 2) That the pension paid by the employer was greater than the compensation benefits, and 3) That as to the employer's responsibility for payment of the attorney's fee, since there were no monies to be paid to the claimant, the claim for attorney's fee was denied.

(f) Docket entries in an appeal to the circuit court originally taken by the County from the Commission's award of 3 March 1975, which appeal the County later dismissed on 18 November 1975.

After arguments of counsel, the judge ruled. He noted that at the time of the Commission's award of 3 March 1975 (and

the fee order of 3 September 1975) there was no Article 101, Section 33 issue before the Commission. He said, in part:

"An award had been made earlier by the Commission, monies had been paid to the claimant and yet this attorney whose work had gone into the case had not received any monies, and according to the order was not entitled to receive any until the final weeks of payment. Well, I think that the lien attached to the right of collection of it, it just was not there at the time. Now, the Commission[er] says it's under my continuing jurisdiction and I can come back and modify this and the Commission did issue an order to modify the earlier order. * * * They are saying, in effect, that we made an award, but because of Section 33 setoff, there was no money and inasmuch as there was no money the lien could not attach. Well, the fact is there was some money, because somebody paid the man $15,000. Now, whether or not they should have paid him is another thing. Now it seems fair, he's going to get $15,000 plus his pension, it doesn't seem fair then you say they ought to go against Seger. The lien as far as I am concerned, or my view is the lien attached upon the issuance of the original order in this case, in so long as there was money it ought to have been reserved for the payment of the attorney's fees. It wasn't done and when it was determined that the setoff was greater than the — the setoff was greater than the amount available to Mr. Seger, then his payments were terminated as far as the award of the Commission was concerned. But it still leaves the attorney in limbo, and I think we ought to construe that the lien attached and the right to the money was there, but the right to collect it wasn't there at the time. And once a lien attached, the money ought to have been held for the payment of the award, so I think we'll allow counsel fees in the amount of the original order by the

Commission, by the order of the 3rd of September 1975."

It was an error of law for the court to hold that Prince George's County was liable to pay the attorney's fee to Feissner for his representation of Seger. We must reverse.

## The McCallum Case — No. 754

On 15 April 1976 Feissner filed a second suit in contract in the circuit court against Prince George's County, Maryland, a body corporate. The declaration contained several common counts, which we need not notice further, and a special count. The basis of the cause of action asserted in the special count was an order of the Workmen's Compensation Commission, entered on 2 March 1976, attached and incorporated into the pleading by reference. The order, on a caption showing William D. McCallum as claimant and the County as employer, said:

> "ORDERED, That the Petition for Attorney's Fees be, and the same hereby is, granted, and it is further
>
> ORDERED, That Karl G. Feissner, Attorney for the Claimant be awarded counsel fees in the sum of
> $6,100.00
> Nine Thousand [sic] Dollars ($9,000.00)."

The declaration alleged that the County had failed and refused to honor the order, and prayed for judgment for $6,100.00, with interest and costs.

With the declaration Feissner filed a motion for summary judgment, saying that there was no genuine dispute as to any material fact, and that he was entitled to judgment as a matter of law. The motion was supported by his affidavit, in which he said that he represented McCallum in three claims before the Workmen's Compensation Commission; that as a result of those proceedings an order was entered in favor of McCallum for benefits; and that an order was entered approving the petition for attorney's fees. The affidavit went on to say that notwithstanding the entry of the order for

attorney's fees, the County had failed and refused to pay the amount ordered.

No other evidentiary material was submitted in support of the motion for summary judgment. Maryland Rule 610. No statement of points or citation of authorities was filed. Maryland Rule 319.

Prince George's County filed general issue pleas to the declaration and filed an unsworn pleading, signed only by counsel, entitled "Answer to Motion for Summary Judgment". Attached to that answer was a copy of the Commission's order of 5 February 1976, directing Prince George's County, employer and self-insurer, to pay compensation to McCallum.

The order recites that the hearing had been held on two issues, one of which was whether the employer was entitled to credit for payments made from disability retirement against any compensation awarded in the case, in accordance with the provisions of Article 101, § 33. The Commission made a finding on that issue that the employer was entitled to the credit. Also in the order the Commission found the claimant to be permanently totally disabled and awarded compensation for permanent total disability at the rate of $96.80 weekly, beginning April 1, 1974, not to exceed the sum of $45,000.00.

The County's answer to the motion for summary judgment amounted in substance to a statement of points in opposition, but included no citation of authorities. The significant points were that the County was not the correct defendant; that the Commission's award of 5 February 1976 recognized the § 33 set-off; and that the Commission's order awarding the attorney's fee was not an award of compensation and did not call upon the County as employer and self-insurer to pay any funds to or on behalf of the claimant.

On this state of the record the motion for summary judgment was argued before Judge James H. Taylor on 9 July 1976. It does not appear that anything else in the nature of evidence was placed before the court. Arguments of

counsel were not recorded. Judge Taylor granted the motion and the clerk entered judgment [1] in favor of Feissner against Prince George's County in the amount of $6,100.00, with interest from date and costs.

The court erred in granting summary judgment. It was not necessary for the County to supply evidence to show a genuine dispute of material facts. The undisputed facts in the pleadings, the affidavit, and the Commission orders before the court, failed as a matter of law to state a cause of action. We must reverse the judgment.

## The Law — Attorneys' Fees

It is desirable to understand the place of attorneys' fees in our compensation law. Ordinarily, fees are a matter between attorney and client. In workmen's compensation cases in Maryland, the State exercises a limited control, expressed in Art. 101, § 57, which says, in pertinent part:

> "* * * No person shall charge or collect any compensation for legal services in connection with any claims arising under this article, * * * unless the same be approved by the Commission. When so approved, such fee or claims shall become a lien upon the compensation awarded, but shall be paid therefrom only in the manner fixed by the Commission. Upon application of any party in interest, the Commission shall have full power to hear and determine any and all questions which

1. Four days later, Feissner filed a paper with the clerk, and requested that it be entered as an exhibit (to what, is not specified). The paper appears to be a copy of an order entered by the Commission on 2 July 1976 ordering that the County Commissioners for Prince George's County pay unto Karl G. Feissner, attorney for the claimant, the attorney's fee in the amount of $6,100.00 as ordered by the Commission on March 2, 1976; subject to the provisions of the Workmen's Compensation Law of Maryland. We do not accept that order as being part of the record before the court when summary judgment was entered.

We note also that on 21 July 1976 Judge Taylor signed and filed a written order granting the motion for summary judgment and ordering the defendant to pay to the plaintiff the sum of $6,100.00, with interest and costs. It is not suggested to us that the unusual wording of that order, purporting to *order* a defendant to pay a judgment at law entered against it, has any significance. The appeal was timely as to both orders.

may arise concerning legal services rendered in connection with any claim under this article \* \* \*. Orders of the Commission regulating payments \* \* \* for legal services may be enforced in the courts of this State, or may be appealed from in like manner as awards for compensation under this article."

Rule 22 of the Commission's Rules of Procedure provides for the filing of applications for allowance of compensation for legal services. The Rule contains this provision:

"The filing of a petition for a fee with the Commission and service of a copy on the employer and insurer, or employer-self-insurer, or the State Accident Fund, as the case may be, shall be notice to said employer and insurer or employer, self-insurer, or the State Accident Fund, to reserve in escrow the amount of fee requested in such petition until such time as the amount of the fee is determined by the Commission."

Under the provision of § 57 that a fee, when approved, "shall be paid [from the compensation awarded] only in the manner fixed by the Commission", it appears to be a general, if not universal, practice of the Commission to provide in a fee order that the fees are to be paid from the final weeks of compensation due in this case.[2]

Two decisions of the Court of Appeals shed light on the question. In *Hoffman v. Liberty Mutual*, 232 Md. 51, 191 A. 2d 575 (1963), the insurer overpaid an award (as reduced on appeal), and then claimed that there were no funds for payment of an attorney's fee. The fee had become a lien when it was ordered, and the insurer was required to hold

---

2. Such a provision does not affect the *liability* to pay, one way or the other. We mention it because one of the County's arguments in the Seger case is that the final weeks never arrived. If a lien attaches for an approved fee, it attaches to the whole award payable. Payment from "the final weeks of compensation" is merely an accounting device to authorize current payment of the fee without interrupting current payments of compensation to the claimant.

enough funds in escrow to discharge the lien. The insurer in fact did so, and recognized the lien by stopping payments to the claimant when they reached a sum which, when added to the attorney's fee and doctors' fees, would equal the total original award.

The Court held that after the lien attached, and funds to pay it were held in escrow, the lien was not discharged by the reduction, on appeal, of the total compensation payable. The Court said, at 56-57:

> "The appellee cannot set aside in escrow the original fee, prosecute an appeal resulting in a lower award, and then take the position that the attorney's lien does not apply. This would defeat the purpose of the law and the rule adopted pursuant thereto. The fact that appellee was compelled to make payments during the pendency of the appeal was not the result of appellant's action, but of the law, for this has been established since *Branch v. Indemnity Ins. Co.* (1929), 156 Md. 482, 144 Atl. 696. But for the appellant's lien the appellee would have been compelled to pay out the full amount of the first award before the appeal was determined. Appellee is estopped from claiming there is no fund from which the lien can be satisfied. The lien of the fee attached at the time of the Commission's original order * * *. We hold that the lien was still in effect and that appellee is deemed to be holding in escrow the amount of appellant's fee. Appellee instituted the appeal and it can not be allowed to say now that by being successful in reducing the award, appellant's fee is extinguished when the lien was in effect all along."

In *Chanticleer Skyline Room v. Greer*, 271 Md. 693, 319 A. 2d 802 (1974) the Court of Appeals affirmed the judgment of this Court in the same case, reported at 19 Md. App. 100, 309 A. 2d 638 (1973). The issue was whether the payment of an approved attorney's fee, for which a lien had attached and for which the funds had been held in escrow by the insurer,

was a payment of compensation to the employee for the purpose of the five year bar against the continuing jurisdiction of the Commission to make modifications or changes in its findings or orders, as authorized by Art. 101, § 40 (c).

In that case the original injury was sustained in 1960, and it appears that the last payment to the claimant was in 1966, but because of the pendency of an appeal, an attorney's fee ordered in March 1966 was not paid. The appeal was long dormant, and was dismissed in March 1970. In June 1970 the insurer paid the attorney's fee. In December 1971 the claimant applied for an additional award. The Commission held that the application was barred by the five year rule. The Superior Court of Baltimore City, this Court, and the Court of Appeals all held to the contrary. The Court of Appeals said, at 700-01:

"Clearly § 57 makes the payment of an attorney's fee both a 'money allowance' and one which is 'provided for in this article.' Because no one here disputes these obvious answers, the focal point of the controversy has always been whether the attorney's fee allowed under § 57 is compensation payable to the employee. The petitioners contend that it is not. Instead, they allege that the Act creates a liability on their part for a fee payable to the claimant's counsel that is independent of the compensation which is payable to the employee. However, since the section states in clear and unambiguous language that the approved fee 'shall become a lien upon the compensation awarded' the employee, we think that this section serves as a complete answer to this question as well. The code does not mandate, as the petitioners contend, that there be two *separate* awards payable by the employer and its insurer, one to the attorney, and another to the employee. Instead, a single award of compensation is made, that which is for the benefit of the employee, and

the statute then merely gives an attorney a lien upon this compensation award to the extent of his fee as approved by the Commission. This does not change the underlying relationship which exists among the petitioners, the respondent, and her attorney. Nor is the ownership of the compensation award, which is a chose in action, destroyed simply because a statutory lien has been imposed upon it. Like any other lien, this lien does not create an ownership interest in the attorney, but merely places a charge upon the fund as security for the debt which is owed to the attorney by his client. *Westinghouse v. State Tax Comm.*, 206 Md. 392, 402, 111 A. 2d 661 (1955). The fact that no one can gain priority over this statutory attorney's lien or that the funds which have been secured for his benefit cannot be applied to reimburse an insurer for an overpayment to a claimant, *Hoffman, supra,* does not alter this in any way."

Several principles concerning attorneys' fees in workmen's compensation cases emerge from the statutes, Rule, and decisions which we have discussed. Some of them are:

a. The fee is the obligation of the claimant to his attorney.

b. No fee may be charged or collected unless approved by the Commission, upon petition and order.

c. The filing of a fee petition, with service of a copy upon the employer and insurer, requires them to reserve in escrow a portion of the award payable to the claimant equal to the fee requested.

d. When approved by an order of the Commission, the fee becomes a lien upon the compensation awarded to the claimant, securing the debt owed by the claimant to his attorney. No one may gain priority over this lien, not even the employer and insurer. The preceding escrow is then extinguished.

e. An approved fee shall be paid from the compensation awarded, and only in the manner fixed by the Commission.

*f.* A fee order may be appealed in like manner as awards of compensation, or may be enforced in the courts independently of an appeal.

*g.* The continuing jurisdiction of the Commission over each case to make modifications or changes with respect to former findings or orders\ under Art. 101, § 40 (c), applies to orders under Art. 101, § 57, relating to fees.

*h.* The Commission has power to adjudicate the propriety and reasonableness of attorneys' fees, and the manner of their payment from the compensation awarded.

*i.* The Commission does *not* have power to adjudicate *liability* for attorneys' fees, or to impose such liability upon any party. It is by operation of the statute that the Commission's order approving a fee brings into being a lien upon the compensation awarded. Beyond this, the Commission has no power to determine the source of payment.

*j.* An employer and insurer are obligated to pay an approved attorney's fee only out of compensation awarded to the claimant. They have no obligation to pay the fee of a claimant's attorney out of their own funds, unless it be for failure to respect a lien lawfully attached.

### The Law — Discharge of Compensation Benefit Liability By Governmental Pension Benefits

Since 28 May 1971, Art. 101, § 33 [later divided into Subsections, with minor style changes], has provided, in part:

> "Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of [the State, any agency thereof, or any other political subdivision] * * *, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer for any benefit under this article. * * *

"The Commission shall have full power to determine whether any benefit provided by the employer is equal to or better than any benefit provided for in this article, and to render an award against the employers to furnish additional benefit or benefits to make up the difference between the benefit furnished by the employers and the benefits required by this article as the case may be. This section shall also be subject to the continuing powers and jurisdiction of the Commission provided for in this article."

The quoted provisions have been construed and applied by this Court in two reported cases, *Nooe v. City of Baltimore,* 28 Md. App. 348, 345 A. 2d 134 (1975), *cert. den.* 276 Md. 748 (1976); and *Mazor v. Dep't. of Correction,* 30 Md. App. 394, 352 A. 2d 918 (1976), and in one case by the Court of Appeals, affirming this Court, in *Mazor v. State, Dep't. of Correction,* 279 Md. 355, 369 A. 2d 82 (1977).[3]

In *Nooe* the claimant, a patrolman in the Baltimore City Police Department, was injured in the course of his employment. The Commission found that he sustained a permanent partial disability of 50%, but barred compensation benefits because his pension benefits were concededly greater. On appeal by Nooe, the Baltimore City Court affirmed. We affirmed the judgment of that court. We said, through Chief Judge Orth, at 354-55:

"The question is, therefore, whether, under the circumstances, § 33 of art. 101 was applicable, so that the payment to Nooe of the pension benefits discharged in full the obligation of the Mayor and City Council of Baltimore with respect to the workmen's compensation benefits.

"We point out what is self-evident from the record before us. Within the contemplation of § 33, the Mayor and City Council of Baltimore was an

---

**3.** In both the *Nooe* and *Mazor* cases contentions that the discharge of liability to pay compensation awards applied only in death cases were rejected. That contention is not made in the cases before us.

employer and Nooe was its employee. Through a Retirement System duly established by the enactment of an ordinance, Nooe was furnished benefits by the Mayor and City Council of Baltimore as part of a pension system, and these benefits were furnished him because he was disabled due to an accidental injury arising out of and in the course of his employment so that ordinarily he was also entitled to workmen's compensation benefits. Code, art. 101, § 21 (b) (4). As the pension benefits were more than the workmen's compensation benefits, the liability and obligation of the Mayor and City Council for the workmen's compensation benefits were satisfied and discharged * * *."

We expressed our holding, at 356:

"We hold, as did the Workmen's Compensation Commission and the court below, that the payments to Nooe of the pension satisfied and discharged in full the liability or obligation of the Mayor and City Council of Baltimore for any benefit under the Workmen's Compensation law."

A new question of statutory construction was raised in the *Mazor* case. Mazor was a penitentiary guard, injured in an inmate uprising. The Commission found that he sustained a permanent partial disability of 60%. It found also that Mazor was receiving disability pension benefits greater than the benefits under the compensation law, but held that the discharge of liability under Art. 101, § 33, applied only to the employer, and not to the insurer.

The circuit court, this Court, and the Court of Appeals all held that the discharge of liability for compensation benefits applied to both the employer and the insurer. Mazor also contended that the provisions of § 33 infringed upon his constitutional rights in three respects, in that the statute, (a) deprived him of property without just compensation, (b) deprived him of equal protection of the laws because the

138

classification of public employees differently from private employees was arbitrarily discriminatory, and (c) impaired the State's contractual obligation to him under the pension plan.

The Court of Appeals, fully discussing each of the contentions, held, as this Court had, that "the statute infringes on none of his rights and is thus constitutional." At 364.

### The Law As Applied To The Facts
### Of These Cases

It should be made clear that it is the statute, not the Commission, which discharges "the liability or obligation of the employer for any benefit" under the compensation law. If it is requested to do so, the Commission has the power to determine the factual question of whether a pension benefit is equal to or better than the compensation benefit. The law wisely does not *require* that such a determination be made by the Commission, for in most cases there could be no dispute about that simple mathematical fact. There was no dispute in *Nooe*, nor in *Mazor*, nor is it disputed in the present cases, that the pension benefits in fact exceed the compensation benefits.

When that fact exists — when pension benefits exceed compensation benefits — the law tells us, as we said in *Nooe*, "that the payment to [the employee] of the pension satisfied and discharged in full the liability or obligation of the [employer] for any benefit under the Workmen's Compensation law."

We include a caveat. When we have said, and when we say now, that the compensation liability is discharged, we do so with relation to the facts and the issues involved in the cases before us. The statement necessarily assumes the continuing existence of present circumstances. A subsequent change in either kind of benefits could well require reconsideration of the extent of the statutory discharge of compensation liability.

It should also be made clear that a claim for attorney's fee, although approved by the Commission, has no existence

as far as the employer is concerned, independently of the compensation award. To emphasize, we repeat a quotation from the opinion written by Judge Digges for the Court of Appeals in *Chanticleer, supra:*

> "The code does not mandate, as the petitioners contend, that there be two *separate* awards payable by the employer and its insurer, one to the attorney, and another to the employee. Instead, a single award of compensation is made, that which is for the benefit of the employee, and the statute then merely gives an attorney a lien upon this compensation award to the extent of his fee as approved by the Commission."

At the time of the award of compensation in each of the present cases, the liability of Prince George's County to pay the award was simultaneously discharged by the provisions of § 33, subject only to a later change in one or the other of the benefits. This is so regardless of whether or not the Commission was asked to find as a fact that the pension benefits exceeded the compensation benefits.

When the Commission passed its orders approving the attorney's fees, the County had no compensation liability to either of the claimants to which a lien could attach. Therefore, there was no lien. As we have pointed out, the County had no obligation to pay the fee out of its own funds, unless it ignored a valid lien.

In the Seger case, the County paid some $14,520.00 to the claimant before it invoked the § 33 discharge of liability. Since it had no legal liability to make those payments, it must be said that the County made them as a volunteer. Such generosity may be commendable, but it does not impose upon the County an additional obligation for which it was not legally liable, and which it did not voluntarily assume.

The County was not required to pursue appeals to the circuit court from the Commission's fee orders, as a condition of raising the § 33 discharge. It has never questioned the amounts of the fees, or the right of the

attorney to be paid those fees from the funds of his clients. It says only that it holds no funds of those clients, and that it owes no direct liability to the attorney. The County was entitled to raise those defenses in the direct court proceedings taken as authorized by § 57.

In No. 754, the McCallum case, we shall reverse the summary judgment entered in the circuit court, an action which leaves the case open for further proceedings on remand. The trial judge may deem it appropriate to "render judgment for the opposing party even though he has not filed a cross-motion for summary judgment." Maryland Rule 610 d. 1.

In No. 975, the Seger case, the judgment was on the merits, albeit on facts submitted by stipulation. Since the judgment for Feissner was in error, we shall enter final judgment for the County.

> *In No. 754, judgment reversed.*
> *Case remanded for further proceedings, in accordance with this opinion.*
> *Appellee to pay costs.*
>
> *In No. 975, judgment reversed.*
> *Judgment entered in favor of Prince George's County, Maryland.*
> *Appellee to pay costs.*