WALTER C. NOOE, JR. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE

[No. 143, September Term, 1975.]

*Decided October 7, 1975.*

The cause was argued before Orth, C. J., and Powers and Moore, JJ.

*Karl B. Brockman,* with whom was *Alvin Sellman* on the brief, for appellant.

*Edward J. Glusing, Jr., Special Attorney,* with whom were *Francis B. Burch, Attorney General, J. Howard Holzer, Special Attorney,* and *Charles R. Goldsborough, Assistant Attorney General,* on the brief, for State of Maryland as *Amicus Curiae.*

*Richard K. Jacobsen, Chief Assistant Solicitor for Baltimore City,* with whom were *Benjamin L. Brown, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor,* and *Harry S. Swartzwelder, Jr., Associate City Solicitor,* on the brief, for appellee.

Orth, C. J., delivered the opinion of the Court.

It has long been the policy of the General Assembly, as expressed in its legislative enactments, that an employee of the government shall not receive workmen's compensation benefits in addition to other benefits furnished by the employer accruing by reason of an accidental injury arising out of and in the course of employment. Acts 1914, ch. 800, § 34 provided:

> "Whenever and so long as by State law, City Charter or Municipal Ordinance, provision equal or better than that given under the terms of this Act is made for municipal employes injured in the course of employment such employes shall not be entitled to the benefits of this Act."

This provision remained the same in substance until 1970.[1]

---

1. In the 1964 Replacement Volume of the Annotated Code of Maryland the provision appeared as a part of § 33 of article 101, as follows:

"Whenever and so long as by State law, city charter, or

350

The Court of Appeals had occasion to construe the statute in *Montgomery County v. Kaponin*, 237 Md. 112, decided 7 December 1964. It described the statute, at 115, as providing "state, city and municipal governments with the authority to exclude themselves from carrying workmen's compensation insurance on their employees by permitting them as an alternative to enact their own laws providing benefits for their employees equal to or greater than the benefits provided by Workmen's Compensation if they so desired." It found:

> "Article 101, Section 33 does not provide for offsets of workmen's compensation benefits against the benefits received from a pension fund, but is a qualification statute designed to give municipal employers an alternative to providing workmen's compensation by enacting legislation affording to their employees benefits equal to or greater than those provided by the Workmen's Compensation law." *Id.* at 115.

It held that "the Workmen's Compensation law intends a law by law examination and not a case by case examination. . . ." *Id.* at 115. Determining that the benefits provided by the retirement fund established by Montgomery County for its employees (Chapter 19 of the Montgomery County Code), were not equal to or greater than the provisions of the Workmen's Compensation law, it declared that the claimant was entitled to receive benefits under both. *Id.* at 115. See *Aravanis v. Eisenberg*, 237 Md. 242, n. 1 at 251 (1965). In what was apparently a delayed reaction to the *Kaponin* holding, the 1970 General Assembly deleted the provision from the law. Acts 1970, ch. 741. Acts 1971, ch. 119, however, repealed ch. 741. Ch. 785, Acts 1971, was

municipal ordinance, provision equal to or better than that given under the terms of this article is made for municipal employees injured in the course of employment, such employees shall not be entitled to the benefits of this article."

Hereinafter, unless otherwise indicated, reference to Code, art. 101, § 33 encompasses only those parts of the section with which we are here concerned.

enacted. It was approved 28 May 1971, and upon the declaration that it was "an emergency measure and necessary for the immediate preservation of the public health and safety", it took effect from the date of its passage. An erroneous reference in the Act to § 2 (a) (2) rather than § 21 (a) (2) was corrected by ch. 502, Acts 1972. Ch. 785, codified as § 33 of art. 101, includes:

"Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of employers covered under Section 21 (a) (2) of this article, the dependents and others entitled to benefits under this article as a result of the death of such employees, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer for any benefit under this article. Should any benefits so furnished be less than those provided for in this article the employer shall be liable to furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article.

The Commission shall have full power to determine whether any benefit provided by the employer is equal to or better than any benefit provided for in this article and to render an award against the employers to furnish additional benefit or benefits to make up the difference between the benefit furnished by the employers and the benefits required by this article as the case may be. This section shall also be subject to the continuing powers and jurisdiction of the Commission provided for in this article."

Section 21 (a) (2) encompasses "The State, any agency thereof, and each county, city, town, township, incorporated village, school district, sewer district, drainage district,

public or quasi-public corporation, or any other political subdivision of the State that has one or more employees subject to this act" as constituting employers subject to the Workmen's Compensation law. Patently, ch. 785, Acts 1971, was enacted in answer to *Kaponin*.

As we have indicated, from the inception of the Workmen's Compensation law, the General Assembly was concerned with, and attempted to prohibit, governmental authorities being obliged to pay benefits to an employee twice as a result of the same injury. This concern, evidenced by the provisions of § 34 of ch. 800, Acts 1914, later § 33 of art. 101, was expressed in the preamble to the Act, which after setting out the philosophy of the Workmen's Compensation statute, continued:

> "*Whereas*, in addition thereto, the State and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, which burden should, in so far as may be consistent with the rights and obligations of the people of the State, be more fairly distributed as in this Act provided; . . . . "

When the manifest purpose of § 33 was to a large extent circumvented by the *Kaponin* holding, the General Assembly responded. Acts 1971, ch. 785, clearly provides for offsets of workmen's compensation benefits against the benefits otherwise furnished by a defined employer. It is not a qualification statute such as the Court of Appeals found the former statute to be. To the extent which, by due legislative enactment, a defined employer furnishes an employee with benefits, whether as part of a pension system or otherwise, the liability or obligation of the employer for any workmen's compensation benefit is satisfied and discharged. If the Workmen's Compensation Commission determines that the benefits furnished by the employer are equal to or better than the workmen's compensation benefits, then the liability or obligation of the employer under the workmen's compensation act is fully satisfied and

discharged. The offset nature of the provisions is readily apparent also from the title to the Act which declares that it is to provide that "whenever benefits are furnished by an employer, as defined, equal to or better than the benefits provided under Article 101 of the Annotated Code of Maryland, such defined employer shall be released of any obligation thereunder, but should such benefits be less than those required by the said Article 101, such defined employer shall make up the difference."

Walter Clifford Nooe, Jr., a patrolman in the Baltimore City Police Department, was injured on 6 September 1972. The Workmen's Compensation Commission determined that he had sustained an accidental injury arising out of and in the course of his employment and that he was temporarily totally disabled as a result thereof. Upon hearing on 10 July 1974, it found that Nooe "sustained a permanent partial disability under 'Other Cases' amounting to 50% industrial loss of use of his body ...",[2] but that "Benefits under Workmen's Compensation Law are barred as the benefit '... then provided by the employer is equal to or better than any benefit furnished by the employer.* ...'" On 31 July it ordered "that the claim is barred under Article 101 Section 33; subject to the provisions of the Workmen's Compensation Law of Maryland." Feeling aggrieved by the order Nooe sought review in the Baltimore City Court. Code, art. 101, § 56. Upon hearing on 17 January 1975 the decision of the Workmen's Compensation Commission was affirmed. Judgment *nisi* entered in favor of the employer and self-insurer for costs was made absolute on 22 January. Nooe appealed to the Court of Special Appeals of Maryland.

The "Fire and Police Employees Retirement System of the City of Baltimore" was established by ordinance of the Mayor and City Council of Baltimore. Baltimore City Code, art. 22, §§ 29-41 (1966). The Retirement System authorizes

---

2. Nooe was injured when the motorcycle he was driving collided with another vehicle. He suffered injuries to his left hand, right ankle, pelvis, lower back, left foot and left ankle.

* Patently intended to mean available under the Workmen's Compensation Act.

an allowance on special disability benefit. Art. 22, § 34 (f) provides:

"Upon retirement for special disability a member shall receive a special disability retirement allowance which shall consist of:

(1) an annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement; and

(2) a pension, in addition to the annuity, of sixty-six and two-thirds per cent of his average final compensation."

Nooe was retired for special disability and received two sums bi-weekly from the Retirement System, $17.31 as an annuity pursuant to § 34 (f) (1) and $252.90 as a pension pursuant to § 34 (f) (2). According to the court below "It is conceded in this case that the benefits under the pension plan are greater than those required under Workmen's Compensation . . . [I]t is conceded by both sides that $252.90 is greater than the amount which would be paid to Mr. Nooe under the workmen's compensation award if the benefits were, in fact, payable under that award." [3]

The question is, therefore, whether, under the circumstances, § 33 of art. 101 was applicable, so that the payment to Nooe of the pension benefits discharged in full the obligation of the Mayor and City Council of Baltimore with respect to the workmen's compensation benefits.

We point out what is self-evident from the record before us. Within the contemplation of § 33, the Mayor and City Council of Baltimore was an employer and Nooe was its employee. Through a Retirement System duly established by the enactment of an ordinance, Nooe was furnished benefits by the Mayor and City Council of Baltimore as part of a pension system, and these benefits were furnished him because he was disabled due to an accidental injury arising

---

3. The court below, and we think correctly, determined that the annuity paid Nooe was not within the contemplation of § 33. As the actuarial equivalent of Nooe's accumulated contributions at the time of his retirement, it was not a "benefit furnished by the employer."

out of and in the course of his employment so that ordinarily he was also entitled to workmen's compensation benefits. Code, art. 101, § 21 (b) (4). As the pension benefits were more than the workmen's compensation benefits, the liability and obligation of the Mayor and City Council for the workmen's compensation benefits were satisfied and discharged, unless for other reason § 33 was not applicable.

Nooe advances such other reason. He claims that the provisions of § 33 apply only in death cases. He arrives at this construction through the phrase in the statute, "the dependents and others entitled to benefits under this article as a result of the death of such employees." We do not agree with this interpretation.

The cardinal rule in statutory construction is to effectuate the real and actual intention of the Legislature. *State v. Gibson*, 4 Md. App. 236, 247-248 (1968). It is generally true that the Legislature intended to mean what is plainly expressed in the language of the statute. *Slagle v. State*, 243 Md. 435 (1966). But "Adherence to the meaning of words does not require or permit isolation of words from their context . . . [because] the meaning of the plainest words in a statute may be controlled by the context." *Maguire v. State*, 192 Md. 615, 623 (1949). In construing a statute of doubtful meaning and application, it is proper for the courts to consider the consequences of a proposed construction, so that results that are unreasonable or inconsistent with common sense would be avoided whenever possible. *Height v. State*, 225 Md. 251, 259 (1961). See *Kadan v. Board of Supervisors*, 273 Md. 406, 415 (1974), quoting with approval *Thomas v. Commissioner*, 211 Md. 357, 361 (1956); *Wilson v. State*, 21 Md. App. 557, 567-568 (1974).

Nooe takes the phrase out of context and disregards what comes before. The statute in clear and unambiguous language deals with benefits paid (1) employees, then living, of defined employers, and (2) dependents of employees and others entitled to workmen's compensation benefits as a result of the death of such employees. The judge below pointed out:

> " 'If the court accepted the theory of the claimant that the amended section applies only to death cases the rights of widows and orphans of a deceased employee would be severely restricted whereas an employee who sustained relatively minor injuries resulting in a disability pension would be entitled to double benefits.' "

The judge did not believe that this was the intention of the Legislature. He thought that § 33 "was intended to apply to all claims under the workmen's compensation law . . . ." He elaborated on the legislative intent: "I do not believe that it was the intention of the Legislature, that a City policeman, injured in the line of duty, should be entitled to collect both the disability benefits and the workmen's compensation benefits. It strikes me that this would be unreasonable under the circumstances . . . ." We are in full accord with this view.

We hold, as did the Workmen's Compensation Commission and the court below, that the payment to Nooe of the pension satisfied and discharged in full the liability or obligation of the Mayor and City Council of Baltimore for any benefit under the Workmen's Compensation law.

*Judgment affirmed; costs to be paid by appellant.*