## GEORGE ANDREW FRANK v. BALTIMORE COUNTY, MARYLAND ET AL.

[No. 96, September Term, 1978.]

*Decided March 30, 1979.*

*Michael I. Gordon,* with whom were *David S. Harris* and *Harris, Gordon & Heneson* on the brief, for appellant.

*Steven A. Charles,* with whom were *Frank J. Tripoda* and *Hardwick, Tripoda & Harris* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

We granted certiorari in this case, prior to its consideration by the Court of Special Appeals, to determine whether the offset provision contained in this State's workmen's compensation statute, Md. Code (1957, 1979 Repl. Vol.), Art. 101, § 33 (c)-(d),[1] applies to a pension benefit received by

---

1. Section 33 of Article 101 of the Code provides in pertinent part:

(c) Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of [public] employers . . ., the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full . . ., the liability or obligation of the employer . . . for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer . . . shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article.

(d) The Commission may determine whether any benefit provided by the employer is equal to or better than any benefit provided for in this article . . . . [Md. Code (1957, 1979 Repl Vol.), Art. 101, § 33 (c)-(d).]

an employee from a contributory pension plan. Because we conclude that a pension received under such a plan is a "benefit provided by the employer" and because we agree with the ruling of the Workmen's Compensation Commission — a final determination to that effect being a statutorily mandated condition precedent to a denial of additional payments — that the pension benefits provided to the employee here are "equal to or better than any benefit provided [by workmen's compensation]," we affirm the Circuit Court for Baltimore County's finding that the commission correctly applied section 33 (c)'s offset provision in this case.

The petitioner, Lieutenant George A. Frank, was employed by Baltimore County as a police officer when, on July 27, 1975, he suffered an injury in the line of duty. During the next six months, while receiving full salary, petitioner began to lose time from work because of his injury. Subsequently, on February 6 of the following year Lt. Frank retired with a work related disability attributable to the July injury and, pursuant to Baltimore County Code (1968 & 1976 Cum. Supp.), §§ 20-78 to 79, immediately began to receive pension benefits from his employer at a rate of one-half of his regular pay. This benefit initially amounted to $841.42 per month but, in accord with the county code, has been adjusted periodically to reflect increases in the salary for active officers of the same rank that Lt. Frank had obtained at the time of his retirement.[2] *Id.* § 20-79.

As a result of his injury, at the time of his retirement Lt. Frank filed a claim with the Workmen's Compensation Commission requesting payment for a permanent partial disability. On January 7, 1977, the commission determined that the officer had sustained a twenty percent industrial loss of the use of his body, with fifteen percent of the disability being reasonably attributable to the accidental injury of July 27, 1975, and five percent being due to a preexisting condition. The commission accordingly awarded compensation to the petitioner in the amount of $2,625 to be

2. Petitioner is currently receiving more than $900 per month in pension benefits.

paid at the rate of $54.83 per week beginning from the date of Lt. Frank's retirement. The commission further found, however, that this obligation had been fully discharged under section 33 of Article 101 of the Maryland Code because the pension benefits that were provided by Baltimore County were "equal to or better than any benefit" that could have been provided to Lt. Frank under the workmen's compensation statute. Petitioner appealed this commission decision to the Circuit Court for Baltimore County, Md. Code (1957, 1979 Repl. Vol.), Art. 101, § 56 (a), and, based on an agreed statement of facts in a de novo trial, that court (Cicone, J.), interpreting the applicable statutes in the same manner as did the commission, granted a directed verdict in favor of the county, thus affirming the administrative body's determination.

In reviewing this ruling we, as was the circuit court, are to be guided by the general statutory command that "the decision[s] of the Commission [are] entitled to prima facie correctness." *Md. Bureau of Mines v. Powers,* 258 Md. 379, 382, 265 A. 2d 860, 862 (1970) (applying Md. Code (1957, 1964 Repl. Vol.), Art. 101, § 56 (c)). A court, therefore, may reverse a commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts, *id.* at 383 [862]; Md. Code (1957, 1979 Repl. Vol.), Art. 101, § 56 (c), the former being the sole issue presented for judicial determination in this case.

In scrutinizing the commission's application of this statute, we are mindful that our ultimate goal is to discern and effectuate the actual purpose of the legislature in enacting it. *See, e.g., Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A. 2d 347, 352 (1977); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 360, 369 A. 2d 82, 86 (1977). To reach that objective, we rely primarily upon the language chosen by the General Assembly to express its intention, *see, e.g., State v. Fabritz,* 276 Md. 416, 421, 348 A. 2d 275, 278 (1975), *cert. denied,* 425 U. S. 942 (1976), although if ambiguity or uncertainty exists, the history surrounding the statute's adoption can be used as an aid in its construction. *See, e.g., Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 495, 331 A. 2d 55, 62 (1975). Moreover,

in construing statutes, results that are unreasonable or inconsistent with common sense should be avoided whenever possible. *See, e.g., Giant of Md. v. State's Attorney,* 267 Md. 501, 511-12, 298 A. 2d 427, 433, *appeal dismissed,* 412 U. S. 915 (1973).

Upon reading section 33 the scheme that unmistakably emerges is that the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation. Consequently, this section not only provides that when disability pension benefits exceed workmen's compensation the latter shall be completely eliminated, but also directs that when pension benefits happen to be less than workmen's compensation, the employer is required to furnish additional benefits which, when added to it, will equal the compensation award. *See Feissner v. Prince George's Co.,* 282 Md. 413, 420-21, 384 A. 2d 742, 747 (1978). This construction, besides being supported by the legislative history of section 33, *see Nooe v. City of Baltimore,* 28 Md. App. 348, 352-53, 345 A. 2d 134, 137 (1975), *cert. denied,* 276 Md. 748 (1976), is also consistent with the generally recognized policy underlying all wage-loss legislation:

> Wage-loss legislation is designed to restore to the worker a portion . . . of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss . . . . Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. [4 A. Larson, *The Law of Workmen's Compensation* § 97.10, at 18-9 (1979) (footnote omitted).]

*Accord, Mazor v. State, Dep't of Correction, supra,* 279 Md. at 363, 369 A. 2d at 88.

That Baltimore County was a statutorily defined

employer[3] that had established a pension plan providing benefits to Lt. Frank upon his retirement that were not only equal to but better than the benefits he would have received from the workmen's compensation award is not in dispute here. Petitioner nevertheless argues that properly construed, section 33 provides that a benefit collected from a pension plan maintained by both employer and employee contributions is not a "benefit provided by the employer" to be setoff against a workmen's compensation award until after the employee's contributions are first returned to him. If such an interpretation is utilized, Lt. Frank contends, during the forty-eight weeks in which he would have received workmen's compensation, he was not furnished pension benefits provided by his employer but was only supplied a return of his own contributions to the pension plan and, therefore, could not be said to be receiving payments from his employer which were "equal to or better than" the workmen's compensation award established for this same time period. In sum, petitioner claims he is entitled to both his full pension and his workmen's compensation award.[4]

While we agree with petitioner that his pension is not a benefit *entirely* provided by his employer since, as an employee, he also contributed to the plan, such a finding does not dictate a conclusion that the board improperly applied the offset provision of section 33 in this case. In the first place, the statute does not mandate that the pension benefit be one

---

3. Section 33 (c) directs that "employers covered under § 21 (a) (2) of this article" shall be subject to its provisions. Md. Code (1957, 1979 Repl. Vol.), Art. 101, § 33 (c). Section 21 (a) (2) defines "employer" as:

The State, any agency thereof, and each county, city, town, township, incorporated village, school district, sewer district, drainage district, public or quasi-public corporation, or any other political subdivision of the State that has one or more employees subject to this act. [*Id.* § 21 (a) (2).]

4. Besides the logical flaw in petitioner's argument, which we will develop shortly, there is also a mathematical flaw. Lt. Frank paid $6,713.66 into the pension plan during 25 years of service. On February 6, 1976, he began receiving a pension of $841.42 per month, which was raised to $850 per month on July 1, 1976. Based on these figures, petitioner would have received a return of his total pension contribution within 8 months, but his workmen's compensation payments would have continued for 48 weeks, or 11 months. Thus, even under petitioner's assumption he would be eligible for only 8 months of double benefits rather than the 11 he claimed.

"entirely" supplied by the employer before the commission is required to make the comparison called for in section 33 (d), and, in the second place, the addition of such a requirement would frustrate the legislature's intention to minimize the burden on the public treasury that would result from providing duplicate benefits to public employees. When, as in this case, "the statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, the courts are not at liberty to insert or delete words with a view toward making the statute express an intention which is different from its plain meaning." *Gatewood v. State,* 244 Md. 609, 617, 224 A. 2d 677, 682 (1966) (citing cases). We therefore hold that any employee benefit provided by a public employer, "whether as part of a [statutorily adopted] pension system or otherwise," is sufficient to bring section 33 into play, and that under the juxtaposition provided in that section there exists no reason why the employer should not be discharged from his compensation obligation whenever the total amount of any employee benefit, whether furnished entirely or partially by employer funds, is equal to or better than the workmen's compensation award.[5]

A second flaw in the petitioner's argument is the assumption that the benefits of the two plans are only to be compared for the period in which the two will be simultaneously due. This argument, however, would also require an addition to the statutory language because there is no provision in the act that places a time limitation upon the contrast that is to be made. The statute simply provides for a comparison of the two benefits and, after making such a comparison in this case, we agree with the commission that there is a complete offset. Moreover, even if the petitioner is correct in assuming that the benefits of the pension should

---

5. The petitioner has brought to our attention decisions by the courts of some of our sister states in which they held that workmen's compensation benefits could not be offset by pension benefits generated by employee contributions. *See, e.g.,* Myers v. State, 162 Colo. 435, 428 P. 2d 83 (1967); Dalton v. City of Yonkers, 262 App. Div. 321, 29 N.Y.S.2d 42, *aff'd per curiam,* 287 N.Y. 592, 38 N.E.2d 387 (1941). We have examined these decisions and find that they involve the interpretation of statutes that are dissimilar to the one adopted by our State, thereby making those cases of little value in this context.

be compared with the benefits of workmen's compensation for the period in which both are potentially available, the pension benefits provided — $841 per month — are still far in excess of the benefits provided by workmen's compensation, unless we adopt the assumption that the first $6,713 Lt. Frank received from the pension plan was a return of his contributions to the plan. The petitioner's only basis for urging that the first monies he receives are a return of his contribution to the pension plan is section 72 (d) of the federal Internal Revenue Code. This section states that if payments are received during the first three years of an annuity, purchased with both employer and employee funds, and those payments exceed the total amount of employee contributions, then no payments received are taxable until the employee has received an amount equal to his total contributions. We reject that approach as not being applicable here because, as was made plain by Congress, section 72 (d) was added solely for administrative reasons and not because that legislative body believed employee contributions were actually returned first. *See* S. Rep. No. 1622, 83d Cong., 2d Sess. 11 (1954), *reprinted in* [1954] U.S. Code Cong. & Ad. News 4621, 4640-41; H.R. Rep. No. 1337 83d Cong., 2d Sess. 10 (1954), *reprinted in* [1954] U.S. Code Cong. & Ad. News 4017, 4034-35.[6]

In our view, petitioner's assumption flies in the face of common sense and we decline to adopt it without evidence from the General Assembly that it desired such a result.[7] A more sensible description of the pension is that each monthly payment represents a prorated return of the employee's contributions augmented by employer generated funds. In

---

6. "So employees will not have to make computations where small amounts of exclusions are involved, an individual receiving a pension financed in part by contributions from his employer ... [is] to exclude all annuity payments [from income] until [he has] recovered [his] capital...." S. Rep. No. 1622, 83d Cong., 2d Sess. 11 (1954); H.R. Rep. No. 1337, 83d Cong., 2d Sess. 10 (1954).

7. For examples of legislative enactments that have been found to create a distinction, for the purpose of a workmen's compensation offset provision, between funds placed into a pension plan by an employee and the contributions of his employer, see Nooe v. City of Baltimore, 28 Md. App. 348, 353-55, 345 A. 2d 134, 137-38 (1975) (discussing Baltimore City Code (1966), Art. 22, §§ 29-41 in relation to section 33 of Article 101 of Maryland Code) and Meyers v. State, 162 Colo. 435, 428 P. 2d 83, 85 (1967) (discussing Colorado offset provision, Colo. Rev. Stat. §§ 81-12-1 (5) (a)-(b) (1963)).

*City of Los Angeles v. Industrial Accident Com'n,* 63 Cal. 2d 242, 404 P. 2d 801, 46 Cal. Rptr. 97 (1965), the California Supreme Court was faced with a similar argument, there made by a city, that employer contributions should be deemed to be received first by the employee so that any workmen's compensation award would be completely nullified under the California offset scheme. That court's answer is equally applicable here:

> The city, however, presents no reasoned approach as to why we should adopt this allocation. Both employee deductions and tax monies constitute sources for the pension fund. When a disability pension is paid, it in fact consists of money from both sources. Artificially to allocate all the employee deductions to the "additional" amount and not to the portion which discharges workmen's compensation liability is merely to choose the desired result. It does not solve the issue. [404 P. 2d at 806, 46 Cal. Rptr. at 102 (footnote omitted).]

*Cf.* I.R.C. § 72 (b) (annuitant's contributions are spread evenly over the annuitant's lifetime for purposes of calculating return on investment); 4 J. Rabkin & M. Johnson, *Federal Income, Gift and Estate Taxation* § 63.01, at 6303 (1979) (every annuity payment is both a return of capital and a return on an investment).

Because we determine that the Workmen's Compensation Commission correctly construed and applied the offset provision of section 33 in accordance with the intention of the legislature, we affirm the decision of the Circuit Court for Baltimore County, which had affirmed that commission's ruling.

*Judgment of the Circuit Court for Baltimore County affirmed.
Costs to be paid by petitioner.*