504 A.2d 657

Robert L. HARRIS

v.

MAYOR AND CITY COUNCIL OF BALTIMORE.

Elisha LOVELLETTE, Jr.

v.

MAYOR AND CITY COUNCIL OF BALTIMORE.

Maurice C. SCHINDLER

v.

MAYOR AND CITY COUNCIL OF BALTIMORE.

Nos. 300, 375 and 387, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Feb. 11, 1986.

Certiorari Denied Feb. 26, 1986.

Paul D. Bekman and Laurence A. Marder (Israelson, Jackson & Salsbury, William H. Engelman and Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., on brief), Baltimore, for appellants.

L. William Gawlik, Asst. Solicitor for Baltimore City (Benjamin L. Brown, City Solicitor for Baltimore City and Sheldon H. Press, Chief Solicitor for Baltimore City, on brief), Baltimore, for appellee.

Argued before ROSALYN B. BELL and ROBERT M. BELL, JJ., and JAMES S. MORTON, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. MORTON, Judge, Specially Assigned.

This is an appeal from the Decision and Order of the Circuit Court for Baltimore City (David Ross, J.) affirming the Workmen's Compensation Commission ("Commission") Order of October 3, 1984. Elisha Lovellette, Jr.[1] and Mau-

---

1. *Elisha Lovellette, Jr. v. Mayor and City Council of Baltimore,* No. 375, September Term, 1985.

rice C. Schindler,[2] who are appealing similar rulings, have adopted the brief of appellant Robert L. Harris in the instant case, and thus all three cases will be governed by this opinion.

The single issue presented by appellants in this appeal is whether the circuit court erred in holding that the Commission correctly applied the provisions of Maryland Annotated Code, Article 101, § 64A(b), when it reduced appellant's award of compensation by the amount of his annuity payments and variable investment benefits. For the reasons set forth below, we believe the Commission's Order was correct and shall affirm.

The facts are clear and not in dispute. The appellant, Robert L. Harris, was born on November 24, 1926 and entered the Baltimore City Fire Department on January 12, 1949. On or about January 22, 1977, while fighting a fire, he suffered chest pains and a heart attack. It is not disputed that Harris was permanently totally disabled as a result of heart disease which gave rise to a claim under Section 64A of Article 101 of the Workmen's Compensation Law of Maryland.[3] There is also no dispute that Harris' average weekly wage was $401.26 and that Harris was and is receiving benefits and payments pursuant to the terms of the Fire and Police Employees Retirement System of the Baltimore City Code. Baltimore City Code, Art. 22, § 29–41A (1983). As of the date of the Workmen's Compensation hearing, the total weekly payments and benefits received totaled $362.12 and were allocated as follows:

1. Employee annuity reserve payments—$31.89.

---

**2.** *Maurice C. Schindler v. Mayor and City Council of Baltimore,* No. 387, September Term, 1985.

**3.** Md.Code Ann., Art. 101, § 64A, in pertinent part, states:
  (a)(1) Any condition or impairment of health of any paid municipal ... firefighter ... caused by lung diseases, heart diseases, or hypertension ... resulting in total or partial disability ... shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment.

2. Pension reserve payments—$285.63.

3. 1984 investment variable—$44.61.

TOTAL—$362.12

The Commission deducted the entire package of benefits and payments from Harris' weekly wage and ordered the City to pay Harris compensation for permanent total disability at the reduced rate of $39.14, *i.e.*, $401.26 less $362.12, payable weekly beginning January 23, 1978.

As it is appellant's contention that Section 64A(b) of Article 101 was misapplied, we must examine the pertinent language there. Section 64A(b) states:

> Any paid fire fighter or fire fighting instructor whose compensable claim results from a condition or impairment of health *caused by lung diseases, heart diseases,* hypertension, or, as provided in subsection (a)(2) of this section, throat, prostate, rectal, or pancreatic cancer or leukemia caused by contact with toxic substances, and any paid police officer whose compensable claim results from a condition or impairment of health caused by heart diseases or hypertension and has been suffered in the line of duty shall receive such benefits as are provided for in this article *in addition to such benefits as he may be entitled to under the retirement system* in which said fire fighter or police officer was a participant at the time of his claim. *The benefits received under this article however, shall be adjusted so that the total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said fire fighter or police officer.*

(emphasis added). At first blush, the language seems clear and unambiguous. Appellant contends, however, that the term "benefits"—as it describes what appellant "may be entitled to under the retirement system"—contains a latent ambiguity that, as applied by the Commission, frustrates the Legislature's purpose behind the statute. Before deciding whether in fact an ambiguity exists that requires us to

embark upon statutory construction, we shall continue to explore appellant's argument.

The Fire and Police Employees Retirement System, which is set forth in Article 22 of the Baltimore City Code (1983), provides that when an employee retires due to a disability, he is entitled to a "retirement allowance" which is derived from two separate sources: (1) an "annuity," which is the payments for life derived from the accumulated contributions of the employee; and (2) a "pension," which is the payment for life derived from money provided by the employer—City of Baltimore. Article 22, § 30(12)(13)(15). In addition to the retirement allowance, Section 36A of Article 22 entitled retired employees to "Variable Benefit Increases," which in effect are available excess investment earnings derived from *both* the pension *and* annuity funds.

Appellant, in his argument, emphasizes that the annuity portion of the retirement allowance and the variable benefit increases, which result in part from the annuity fund, are derivable from employee, rather than employer, contributions. He then points out that in *Nooe v. Mayor and City Council of Baltimore*, 28 Md.App. 348, 345 A.2d 134 (1975), we indicated in a footnote that an annuity, because it derived from accumulated employee contributions, was not a "benefit furnished by the employer." *Id.* at 354 n. 3, 345 A.2d 134. In light of this note in *Nooe*, and another in *Frank v. Baltimore County, Maryland*, 284 Md. 655, 399 A.2d 250 (1979), where the distinction between employer and employee contributions was again acknowledged, *id.* at 662 n. 7, 399 A.2d 250, appellant asks that we interpret "benefits under the Retirement Systems" as not including "payments which constitute nothing more than a return of an employee's invested pre-injury wage."

To support this requested interpretation, appellant cites us to several Maryland cases that require Workmen's Compensation Law to be construed liberally and in favor of the claimant. *See Howard County Ass'n for the Retarded Citizens, Inc. v. Walls*, 288 Md. 526, 418 A.2d 1210 (1980); *Wiley Manufacturing Co. v. Wilson*, 280 Md. 200, 373 A.2d

613 (1977); *Bethlehem-Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 45 A.2d 79 (1945); *Coats and Clark's Sales Corp. v. Stewart,* 39 Md.App. 10, 383 A.2d 67 (1978).

Appellant rounds out his argument by asking us to interpret the language—"benefits under the retirement system" —in light of other language in the Workmen's Compensation Article that addresses set-offs. Significantly, Article 101, § 33(c) of the Maryland Annotated Code provides, in pertinent part, that

> [w]henever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of employers covered under § 21(a)(2) of this article, the dependents and others entitled to benefits under this article as a result of the death of such employees, *the benefit or benefits when furnished by the employer* shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article.

(emphasis added). Indeed, it was the italicized language in § 33(c)—"benefits when furnished by the employer"—that this court in *Nooe v. Mayor and City Council of Baltimore,* 28 Md.App. at 354 n. 3, 345 A.2d 134, interpreted as not contemplating the annuity contributed by the employee. Unfortunately for appellant, the distinction recognized in *Nooe* is inapposite to the language in § 64A(b).

While the result appellant requests in this appeal may be "fairer" than that imposed by the Commission's Order, we are constrained by the rules of statutory construction which are firmly embedded in Maryland common law.

> Where the statutory provisions are unambiguous, no construction is required, so that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation. But where a statute is plainly susceptible of more than one meaning, construction is required; in such cir-

cumstances, courts may consider not only the literal or usual meaning of words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment.

*State v. Intercontinental, Limited,* 302 Md. 132, 137, 486 A.2d 174 (1985) (citations omitted).

Here the language of § 64A(b) is clear, especially when compared to § 33(c). The language in § 33(c) distinguished benefits *furnished by the employer* from those furnished by the employee.[4] The language in § 64A(b), however, does not discern whether the benefits be furnished by the employer or the employee; only that the benefits are such that a retired employee may be entitled to them *under the retirement system.*

We are not permitted, under the rules of statutory construction, to insert into the unambiguous language of § 64A(b) any exceptions not made by the Legislature. *St. Paul Fire and Marine v. Insurance Commissioner,* 275 Md. 130, 339 A.2d 291 (1975); *Scoville Services, Inc. v. Comptroller of the Treasury,* 269 Md. 390, 306 A.2d 534 (1975). Therefore, we may not interpose a distinction between employee and employer contributions into the language of § 64A(b), nor for that matter into Article 22 of the Baltimore City Code, and thus we must reject appellant's interpretation.

Similarly, because it is clear under § 64A(b) that "the total of all weekly benefits [received under the Workmen's Compensation Article] shall not exceed one hundred percent of the weekly salary which was paid to" appellant, we find that the Commission's Order and determination of the appropriate set-off was amply supported by the law and the

---

4. This strict distinction was nonetheless held not to preclude consideration of employee contributions to a pension fund as being "benefits furnished by the employer," because the statute did not require that the benefits be *entirely* furnished by the employer. *See Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979).

facts. Appellant has therefore failed to show any error on the part of the Circuit Court for Baltimore City.

JUDGMENTS AFFIRMED; APPELLANTS TO PAY THE COSTS.