511 A.2d 52

**Robert L. HARRIS, Elisha Lovellette, Jr. and Maurice C. Schindler**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE CITY.**

**No. 151, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 11, 1986.

Laurence A. Marder (Paul D. Bekman, Israelson, Jackson & Salsbury and William H. Engelman and Kaplan Heyman, Greenberg, Engelman & Belgrad, P.A., on brief), Baltimore, for appellant.

L. William Gawlik, Asst. Sol. (Benjamin L. Brown, City Sol. and Sheldon H. Press, Chief Sol., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

We granted certiorari in this case to determine whether certain benefits recoverable under the Workmen's Compensation laws were properly reduced pursuant to Maryland Code (1957, 1985 Repl.Vol.), Art. 101, § 64A(b), by the amounts of payments received by appellants through a Baltimore City pension plan under its Fire and Police Employees Retirement System (Retirement System). Baltimore City Code, Art. 22, §§ 29–41A (1979, 1983 Repl.Vol.).

## I

The facts giving rise to the present controversy are uncontroverted and may be stated briefly. All of the appellants were firefighters employed by the City of Baltimore. Each suffered an impairment of health as contemplated by Art. 101, § 64A.[1] Each filed a claim with the Workmen's Compensation Commission (Commission) and was awarded permanent total disability compensation. However, each

---

1. Art. 101, § 64A, Md. Ann. Code:

    "(a)(1) Any condition or impairment of health of any paid municipal, county, State, airport authority or fire control district, fire fighter or fire fighting instructor caused by lung diseases, heart diseases, or hypertension, and any condition or impairment of health of any paid State, municipal, Maryland-National Capital Park and Planning Commission, county or airport authority police officer caused by heart diseases or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment.

    \*   \*   \*   \*   \*   \*

    "(b) Any paid fire fighter or fire fighting instructor whose compensable claim results from a condition or impairment of health caused by lung diseases, heart diseases, hypertension, or, as provided in subsection (a)(2) of this section, throat, prostate, rectal, or pancreatic cancer or leukemia caused by contact with toxic substances, and any paid police officer whose compensable claim results from a condition or impairment of health caused by heart diseases or hypertension and has been suffered in the line of duty shall receive such benefits as are provided for in this article in addition to such benefits as he may be entitled to under the retirement system in which said fire fighter or police officer was a participant at the time of his claim. The benefits received under this article however, shall be adjusted so that the total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said fire fighter or police officer.

    "(c)(1) Any volunteer fireman or fire fighting instructor or rescue squad member referred to in § 21(b)(4) of this article whose compensable claim results from a condition or impairment of health caused by lung diseases, heart diseases, hypertension, or, as provided in subsection (c)(2) of this section, throat, prostate, rectal, or pancreatic cancer or leukemia that is caused by contact with toxic substances, suffered in the line of duty shall receive the benefits provided for in this section if that person has met a suitable standard of physical examination for membership."

    \*   \*   \*   \*   \*   \*

    (1971, ch. 695; 1972, ch. 281; 1975, ch. 598; 1977, ch. 388; 1978, ch. 547; 1985, ch. 760.)

claimant's award was reduced by the entire amount of retirement allowances received by that claimant under the Fire and Police Employees Retirement System of Baltimore City. The amount of retirement allowances receivable by covered employees consisted of pension payments, annuity payments and investment variable payments. The pension constitutes the actuarial equivalent of money provided by the employer, the City of Baltimore. The annuity constitutes the actuarial equivalent of the accumulated contributions of the employee at the time of his retirement. The investment variable constitutes the excess investment earnings derived from both the pension and annuity funds.

Feeling aggrieved, each of the three appellants appealed the Commission's award to the Circuit Court for Baltimore City, which affirmed the Commission's disposition of the claims. Similarly, the Court of Special Appeals affirmed in a reported opinion filed February 11, 1986. *Harris et al v. City of Baltimore*, 66 Md.App. 397, 504 A.2d 657 (1986). We granted certiorari to consider a question of public importance. For reasons herein stated, we affirm.

## II

By Chapter 695, Laws of Maryland, 1971, the legislature provided that certain occupational diseases sustained by certain firefighters in the line of duty and as a result of their employment are to be presumed compensable. *See* Art. 101, § 64A(a). It was further provided that such a claimant could receive certain benefits under the Workmen's Compensation laws in addition to receiving those benefits recoverable under the retirement system in which the claimant was a participant at the time his claim was made. *See* Art. 101, § 64A(b). These provisions came to be present section 64A of Article 101 of the Annotated Code of Maryland. Since its inception in 1971, the breadth of coverage provided by § 64A has been expanded and now includes state, municipal, Maryland-National Capital Park and Planning Commission, county and airport authority police offi-

cers, as well as volunteer firefighters, fire fighting instructors and rescue squad members.[2]

Of particular concern here, however, is the applicability and effect of subsection (b) of § 64A. In subsection (b), the legislature has provided in part that the benefits received by a covered claimant under the Workmen's Compensation laws "shall be adjusted so that the total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said fire fighter or police officer." It is this unambiguous language that disposes of appellants' contention.

■ In resolving the question before us, we initially look to the language in the statute. If it is clear and unambiguous, then we need look no further. *Erwin and Shafer, Inc. v. Pabst Brewing Co., Inc.*, 304 Md. 302, 309, 498 A.2d 1188 (1985). In such a case, a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation. Doing so merely provides the clearest indication of the legislative intent and is thus the primary source for all statutory construction. *State v. Berry*, 287 Md. 491, 495, 413 A.2d 557 (1980).

By its enactment of § 64A, the legislature has expressed its continued interest in providing wage-loss protection for the covered employees but, at the same time, recognized that an employee who sustains compensable injuries under the Workmen's Compensation laws experiences but one wage loss. This recognition by the legislature is in accord with that of the legal commentators and is consistent with similar provisions embodied in Article 101.

The desirability for coordination of an overall system of wage-loss protection is aptly discussed in Larson's *Workmen's Compensation Law*, § 97.00:

---

**2.** See 1971 Md.Laws 695; 1972 Md.Laws 281; 1975 Md.Laws 598; 1977 Md.Laws 388; 1978 Md.Laws 547; 1985 Md.Laws 760, for legislative history of Art. 101, § 64A.

"Once it is recognized that workmen's compensation is one unit in an overall system of wage-loss protection, rather than something resembling a recovery in tort or on a private accident policy, the conclusion follows that duplication of benefits from different parts of the system should not ordinarily be allowed...."

See also *Mazor v. State Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977). *Compare* Art. 101, § 33(c).[3]

We stated in *Feissner v. Prince George's County,* 282 Md. 413, 420-21, 384 A.2d 742 (1978):

"We recently considered the offset provisions of § 33 in *Mazor v. State, Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977), *aff'g* 30 Md.App. 394, 352 A.2d 918 (1976); *see also Nooe v. City of Baltimore,* 28 Md.App. 348, 345 A.2d 134 (1975), *cert. denied,* 276 Md. 748 (1976). In *Mazor,* taking note of the fact that a majority of American jurisdictions provide for some form of setoff in the area of wage-loss legislation, we said:

'[W]orkmen's compensation is one facet of an overall system of wage-loss protection, and ... the underlying principle of the system is to restore to the worker a portion of wages lost by physical disability, unemploy-

---

**3.** Art. 101, § 33(c) provides:

"Whenever by statute, charter, ordinances, resolution, regulation or policy adopted thereunder, whether as part of a pension system or otherwise, any benefit or benefits are furnished employees of employers covered under § 21(a)(2) of this article, the dependents and others entitled to benefits under this article as a result of the death of such employees, the benefit or benefits when furnished by the employer shall satisfy and discharge pro tanto or in full as the case may be, the liability or obligation of the employer and the Subsequent Injury Fund for any benefit under this article. If any benefits so furnished are less than those provided for in this article the employer or the Subsequent Injury Fund, or both shall furnish the additional benefit as will make up the difference between the benefit furnished and the similar benefit required in this article. Provided, however, that the computation of the additional benefit shall be applicable only at the time of the initial award of benefits and shall not be applicable to any cost of living adjustments after the initial award, and this provision shall be retroactive to benefits received before July 1, 1980."

ment, or old age. It follows that although two or more causes of wage loss may coincide, the benefits need not cumulate, for the worker experiences but one wage loss.' 279 Md. at 363, 369 A.2d 82 (citation omitted)."

A year later, we had occasion to discuss the offset provision of § 33 of Art. 101 in *Frank v. Baltimore County,* 284 Md. 655, 659, 399 A.2d 250 (1979). There we said through Judge Digges:

"Upon reading section 33 the scheme that unmistakably emerges is that the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation. Consequently, this section not only provides that when disability pension benefits exceed workmen's compensation the latter shall be completely eliminated, but also directs that when pension benefits happen to be less than workmen's compensation, the employer is required to furnish additional benefits which, when added to it, will equal the compensation award. *See Feissner v. Prince George's Co.,* 282 Md. 413, 420–21, 384 A.2d 742, 747 (1978). This construction, besides being supported by the legislative history of section 33, *see Nooe v. City of Baltimore,* 28 Md.App. 348, 352–53, 345 A.2d 134, 137 (1975), *cert. denied,* 276 Md. 748 (1976), is also consistent with the generally recognized policy underlying all wage-loss legislation:

Wage-loss legislation is designed to restore to the worker a portion ... of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage-loss.... Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. [4 A. Larson, *The Law of Work-*

*men's Compensation* § 97.10, at 18–9 (1979) (footnote omitted).]"

■   Significantly, the petitioner in *Frank* presented the same argument to the Court as the appellants, in part, present to us.   In *Frank*, petitioner argued that since he had contributed to his pension plan, any benefit he received from the plan was not a "benefit provided by the employer" under § 33(c) and, therefore, there could be no setoff. While the language of § 64A(b) is somewhat different from that of § 33(c), the rationale underlying its enactment is the same.   Thus, what we said in *Frank* in regard to employee contribution is not only applicable, but dispositive as well. There we stated:

"While we agree with petitioner that his pension is not a benefit *entirely* provided by his employer since, as an employee, he also contributed to the plan, such a finding does not dictate a conclusion that the board improperly applied the offset provision of section 33 in this case.   In the first place, the statute does not mandate that the pension benefit be one 'entirely' supplied by the employer before the commission is required to make the comparison called for in section 33(d), and, in the second place, the addition of such a requirement would frustrate the legislature's intention to minimize the burden on the public treasury that would result from providing duplicate benefits to public employees.   When, as in this case, 'the statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, the courts are not at liberty to insert or delete words with a view toward making the statute express an intention which is different from its plain meaning.' *Gatewood v. State*, 244 Md. 609, 617, 224 A.2d 677, 682 (1966) (citing cases)."

284 Md. at 660–61, 399 A.2d 250.

Accordingly, we hold that the Commission was correct in adjusting the compensation benefits awarded to appellants and the Court of Special Appeals likewise was correct in affirming the judgment below.

JUDGMENT OF THE COURT OF SPECIAL APPEALS
AFFIRMED; COSTS TO BE PAID BY APPELLANTS.