520 A.2d 1136

James A. RICKS, co/def Kevin R. DeShields, co/def Van Allen Lewis

v.

STATE of Maryland.

No. 742, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Feb. 10, 1987.

Certiorari Granted June 22, 1987.

288

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellants.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty., for Baltimore City, John Prevas, Former Asst. State's Atty., for Baltimore City and Brian Murphy, Asst. State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

**290**

Argued before GILBERT, C.J., and MOYLAN and KARWACKI, JJ.

GILBERT, Chief Judge.

The major issue in this appeal is whether the police may employ surreptitious non-consensual video surveillance in tracking suspected criminal activity. Three minor issues are also presented, but they are eclipsed by the magnitude of the video surveillance question.

This case stems from an extensive narcotics investigation by the Baltimore City Police Department and the Federal Drug Enforcement Administration. Utilization of pen registers, physical surveillance, and "wiretap" orders disclosed a suspected organization involved in violations of controlled dangerous substances (CDS) laws. The appellants—James A. Ricks, Kevin R. DeShields, and Van Allen Lewis—were identified as part of the narcotics distribution organization.

In the Circuit Court for Baltimore City Judge Milton B. Allen on June 8, 1984, issued orders authorizing the use of electronic listening and recording devices as well as video surveillance and recording devices at 2500 Edgecomb Circle North, Apartment I, in Baltimore City. The site was suspected of being a "processing house" or "cut house" where CDS were diluted and packaged for street sale. Judge Allen's order was extended, and the investigation continued.

Armed with a search and seizure warrant, the police in August 1984 entered the apartment and arrested Ricks, DeShields, and Lewis along with other individuals. The appellants were charged, among other things, with possession of heroin and cocaine with intent to manufacture or distribute CDS.

Prior to trial Ricks, DeShields, and Lewis moved to suppress the video tape recordings as being in violation of federal and Maryland law. Judge Elsbeth Levy Bothe of the Circuit Court for Baltimore City denied the motion. A jury subsequently found the three men guilty of possession of heroin and cocaine with intent to manufacture or distribute. Ricks, DeShields, and Lewis were sentenced to impris-

onment for terms of thirty, twenty, and ten years respectively. This appeal ensued.

The appellants posit a pentad of issues, *videlicet:*

"1. Does the Maryland Legislature's extensive codification of procedures for the use and control of electronic surveillance and wiretapping command that a warrant to authorizing [sic] surreptitious non-consensual video surveillance and recording in a private place is invalid, since there is no statutory provision authorizing such surveillance?

2. Was the video surveillance of the subject premises conducted in violation of the Fourth Amendment, requiring suppression of its fruit?

3. Did the trial court err when it refused to instruct the jury regarding specific intent?

4. Did the trial court err when it permitted a key state's witness to repeatedly render his opinion as to the identity of individuals on a videotape recording presented to the jury?

5. Did the trial court err in admitting into evidence two handgun holsters and a piece of metal alleged, by an unqualified expert, to be a .45 caliber rifle barrel?"

## I.

### Video Surveillance and Maryland Wiretap and Electronic Surveillance Law

The appellants argue:

"[T]he warrant purporting to authorize surreptitious video surveillance in a private place was invalid under Maryland law since the general assembly clearly intended to place controls on all manner of secret, electronically aided surveillance by law enforcement in areas not in plain view."

■ Maryland's Wiretap and Electronic Surveillance Act, Md.Courts and Judicial Proceedings Code Ann., §§ 10–401 to –413, regulates the interception of wire or oral communications. "Intercept" is defined as the *"aural* acquisition of the contents of any wire or oral communication through the

use of any electronic, mechanical, or other device." *Id.* at § 10–401(3) (emphasis added). The statute is an "offspring of [and] modeled after" the federal wiretap statute.[1] *State v. Bailey,* 289 Md. 143, 151–52, 422 A.2d 1021, 1026 (1980).

Appellants readily admit that video surveillance is not regulated by the federal act, *United States v. Biasucci,* 786 F.2d 504, 508–09 (2nd Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); *United States v. Torres,* 751 F.2d 875, 880–81 (7th Circ.), *rev'g.* 583 F.Supp. 86 (N.D.Ill.1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985); *In the Matter of an Application for an Order Authorizing Interception of Oral Communications and Videotape Surveillance,* 513 F.Supp. 421, 422–23 (D.Mass.1980); *People v. Teicher,* 52 N.Y.2d 638, 652–53, 422 N.E.2d 506, 513, 439 N.Y.S.2d 846, 853 (1981), and they acknowledge that the Maryland statute does not "expressly contemplate video surveillance."[2] Nevertheless, the appellants suggest that inasmuch as the Maryland act is "more restrictive on the use of electronic surveillance methods than [its federal counterpart,[3] it] should be read to forbid a Judge from authorizing non-consensual video searches of private places." We have an entirely different view.

What appellants suggest not only diverges from the plain meaning of the wiretap and electronic surveillance law, but

---

1. Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, Title III, § 802, 82 Stat. 212 (currently found at 18 U.S.C. §§ 2510–20 (1982 & Supp.1985).

2. In Laws of 1977, ch. 692, the Legislature repealed the Electronic Devices Law and enacted the Wiretapping and Electronic Surveillance Law. The Electronic Devices Law, codified in Md.Ann.Code art. 27, § 125A, did not proscribe video surveillance. That was the clear holding of *Avery v. State,* 15 Md.App. 520, 543, 292 A.2d 728, 744, *cert. denied,* 266 Md. 733 (1972), *appeal dismissed,* 410 U.S. 977, 93 S.Ct. 1499, 36 L.Ed.2d 173 (1973).

3. *Petric v. State,* 66 Md.App. 470, 479, 504 A.2d 1168, *cert. denied,* 306 Md. 289, 508 A.2d 489 (1986). *See* Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* 8 U.Balt.L.Rev. 183 (1979).

it also imports to the Legislature a motive that does not appear to have been considered by that body, much less intended.

The Court of Appeals in *Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977), made manifest:

> "It is elementary that a statute should be construed according to the ordinary and natural import of the language used unless a different meaning is clearly indicated by its context, without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. *State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975); *Slate v. Zitomer,* 275 Md. 534, 341 A.2d 789 (1975). In other words, a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute...."

*See Harris v. Mayor of Baltimore,* 306 Md. 669, 673, 511 A.2d 52, 54, *aff'g,* 66 Md.App. 397, 504 A.2d 657 (1986).

Appellants contend that the warrant for video recording was invalid "since there is no statutory provision authorizing such surveillance." In sum, appellants seem to assert that what is not expressly permitted is implicitly proscribed. We think, however, that "the motto of the Prussian State—that everything which is not permitted is forbidden—is not a helpful guide to statutory interpretation." *United States v. Torres,* 751 F.2d at 880.

Video surveillance of suspected criminal activity is not proscribed or regulated by the Maryland Wiretap and Electronic Surveillance Act.

## II.

### *Video Surveillance and Fourth Amendment*

Appellants next aver that the "video surveillance of the subject premises was conducted in violation of the Fourth Amendment requiring suppression of its fruit." We do not address the merits of the argument because the appellants have failed to demonstrate any violation of an interest of theirs that the Fourth Amendment was designed to protect.

■ The appellants were the proponents of the motion to suppress and, therefore, had the burden of establishing that their Fourth Amendment rights were violated through the use of the video surveillance. *Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424, 58 L.Ed.2d 387, 393 (1978). To satiate that burden required appellants to show that they had a "legitimate expectation of privacy in the invaded place." *Id.* at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401. *See Katz v. United States,* 389 U.S. 347, 359, 88 S.Ct. 507, 515, 19 L.Ed.2d 576, 586 (1967); *Bates v. State,* 64 Md.App. 279, 283–84 494 A.2d 976, 978–79 (1985).

The Supreme Court in *Rakas* explained that "[l]egitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." 439 U.S. at 144 n. 12, 99 S.Ct. at 431 n. 12. Judge Rosalyn Bell in *McMillian v. State,* 65 Md.App. 21, 32–33, 499 A.2d 192, 197–98 (1985), reviewed factors that are considered in determining whether a legitimate expectation of privacy existed. Those factors include: (1) possessory interest in the premises; (2) right to and length of stay at the searched premises; (3) limitation, if any, on access to the searched premises; (4) right to exclude others from the searched area; (5) precautions, if any, taken to maintain privacy; and (6) subjective expectation of privacy in the area searched.

■ At the suppression hearing in the instant case, the appellants admitted that they had no proprietary interest in Apartment I at 2500 Edgecomb Circle North but maintained that they were "invited" there. No other evidence was offered to support the appellants' allegations of legitimate expectation of privacy in the Edgecomb Circle North property.

*Rakas* rejected the "legitimately on the premises" test that was used by the high Court in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), for the purpose of determining whether the accused had the right under the Fourth Amendment to challenge a search. Yet,

the *Rakas* Court acknowledged that Jones legitimately could have expected privacy in the apartment of a friend when Jones had permission to use the apartment *and* a key to the apartment, kept possessions there, slept there at least once, "had complete dominion and control over the apartment and could exclude others from it." 439 U.S. at 149, 99 S.Ct. at 433, 58 L.Ed.2d at 405. The appellants in the case *sub judice* fell well short of any such showing.

Phrased more simplistically, the appellants did not meet the burden of demonstrating a legitimate expectation of privacy in the searched premises, and none of their Fourth Amendment rights were violated.

### III.

### *Jury Instructions Re: Specific Intent*

■ Appellants argue that the "intent" element of the charge of possession of heroin and cocaine with intent to manufacture or distribute[4] "obligates the State to prove a 'specific intent' in order to obtain a conviction." Appellants insist that the trial court's failure to instruct the jury concerning "specific intent constituted reversible error."

Judge Bothe instructed the jury:

"The defendants in this case are each charged with possession of heroin and cocaine with intent to manufacture or distribute it. If you find beyond a reasonable doubt that the defendants, each or any of them, was in either direct or constructive possession and control of either or both cocaine and heroin at the time and place charged, then you would have to determine whether that possession was possession with intent to manufacture or distribute, or was simple possession without intent to manufacture of distribute.

In making this determination, you should consider all of the circumstances under which you found beyond a reasonable doubt that the defendant was in possession of

---

4. The crime of possession with intent to manufacture or distribute is described in Md.Ann.Code art. 27, § 286(a)(1).

heroin or cocaine, and among your considerations you may take into account the amount of the drugs involved, the circumstances under which those drugs were in the possession of the particular defendant as you find them, and all other circumstances which would indicate to you whether ... that particular defendant or defendants was manufacturing or preparing to distribute the drugs.

. . . . .

The manufacture of drugs occurs or can occur when there is preparation of drugs for the purpose of sale or distribution, which could include the mixing of drugs or the packaging of drugs, or the handling of drugs, for the purpose of preparing them for sale or distribution."

This Court in *State v. Beers,* 21 Md.App. 39, 41, 318 A.2d 825, 826 (1974), speaking through Judge Jerold V. Powers, held that the crime of possession with intent to manufacture or distribute "may be shown by evidence of possession in a quantity and under circumstances sufficient to support an inference of an intent to manufacture, or to distribute...." Judge Bothe's instruction "clearly set forth the applicable law," and no separate instruction as to "specific intent" was required. *England v. State,* 21 Md.App. 412, 427, 320 A.2d 66, 75 (1974), *aff'd,* 274 Md. 264, 334 A.2d 98 (1975); *see also* Md.Rule 4–325(c).

## IV.

### *Identity of Videotaped Individuals*

■ According to the appellants the trial court erred in allowing "the State to give 'play by play' commentary and opinion as to the identity of the images on the [video] tape [thereby usurping] the jury's role and improperly bolster[ing] the quality of the State's ... evidence." The issue raised is totally devoid of merit.

The record reveals that Detective Edgerton testified that he observed and recognized each of the appellants during a physical surveillance prior to the probe at the Edgecomb Circle site. The detective told the jury that he monitored the video tape recordings that were introduced into evi-

dence. Judge Wilner in *Tobias v. State,* 37 Md.App. 605, 616–17, 378 A.2d 698, 705, *cert. denied,* 281 Md. 745 (1977), penned, "We find no abuse of discretion in allowing the authenticating witness to identify the people shown in the video tape.... The jury saw the tape, and could judge for itself ... whether [Detective Edgerton's] identifications were accurate." *Tobias* is dispositive of the issue.

## V.

### *Two Challenged Evidentiary Rulings*

Judge Bothe, appellants claim, erred twice with respect to the admission into evidence of two handgun holsters and a piece of metal seized at the Edgecomb Circle North location. They argue that the State's witness was unqualified to render an opinion that the metal cylinder was a .45 caliber rifle barrel and also that the evidence was irrelevant and inadmissible.

Detective Burns testified that he was a thirteen year veteran of the Baltimore City Police Department, spent four years as a homicide detective, and two years in the armed services. We said in *Fitzwater v. State,* 57 Md.App. 274, 281, 469 A.2d 909, 913 (1984), "A witness may be competent to express an expert opinion if he is reasonably familiar with the subject under investigation, regardless of whether special knowledge is based on professional training, observation, and/or actual experience." (Citations omitted). *See Armstrong v. State,* 69 Md.App. 23, 28–29, 515 A.2d 1190, 1193–94 (1986). Detective Burns's testimony fits the mold of *Fitzwater;* it was properly admitted.

Appellants also assert that they were "charged with narcotics violations, not weapons charges, thus, the [holsters and metal gun barrel] did not establish or disprove a fact at issue." Appellants reason that the evidence was, therefore, inadmissible.

During the cross-examination of Detective Burns, he was asked if any weapons were found in the apartment. The response was in the negative. On subsequent redirect examination of the detective, the State introduced ankle and

shoulder handgun holsters as well as the metal cylinder Detective Burns testified was "a .45 caliber semi-automatic barrel for a semi-automatic type rifle."

"The real test of admissibility of evidence in a criminal case is 'the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue.' [citations omitted].... '... [E]vidence, to be admissible, must be relevant to the issues and must tend either to establish or disprove them.'"

*Dorsey v. State,* 276 Md. 638, 643, 350 A.2d 665, 668–69 (1976) (citations omitted). We agree with Judge Bothe that the holsters and metal "show[ed] a connection with weapons" and tended to refute the point made by appellants that there was nothing of a lethal or protective nature in the apartment...." We believe the evidence was probative on the issue of manufacturing or distributing cocaine and heroin in the suspected "processing house." Moreover, the admission of the empty holsters and metal barrel, even if error, was harmless beyond a reasonable doubt in light of the other overwhelming evidence of narcotics violations. *Dorsey v. State,* 276 Md. at 659, 350 A.2d at 678.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.